T. V. TOWER, INC., Plaintiff,

v.

F. Ray MARSHALL et al., Defendants.

Civ. A. No. 77–1551.

United States District Court,
District of Columbia.

Feb. 2, 1978.

Lawrence C. Melton, Washington, D.C., for plaintiff.

Earl J. Silbert, U.S. Atty., Robert N. Ford, Asst. U.S. Atty., Richard A. Olderman, Washington, D.C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on cross-motions for summary judgment. The central issue is whether names of certain individuals who gave statements to investigators from the Occupational Safety and Health Administration may properly be withheld

pursuant to exemption 7(D) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(D). Upon consideration of the memoranda filed, the affidavits submitted, the oral hearing on the matter, and for the reasons hereinafter stated, the Court finds that there are no material facts in dispute [1] and that the defendants are entitled to a judgment as a matter of law.

## I. FACTUAL BACKGROUND

Plaintiff, T. V. Tower, Inc., was the owner of a 1,484 foot guyed television broadcasting tower located near Lake Pickett, Orange County, State of Florida. In the course of its business, plaintiff leased a space on the tall tower to Florida Central East Coast Educational Television, Inc., ("Channel 24"). Channel 24 employed Jampro Antenna Company ("Jampro") to design and install an antenna and a coaxial line on the tall tower. On or about June 8, 1973, while Jampro and its agent, Tower Maintenance of Florida, Inc., ("Tower Maintenance"), were installing Channel 24's coaxial line on the tall tower, the tall tower collapsed. As a result of the accident, two employees of Tower Maintenance were killed, and the plaintiff suffered extensive damage to its property and business.

Following the collapse of the plaintiff's tall tower, plaintiff began to investigate the causes of the accident. During that investigation, plaintiff was approached by representatives of the Occupational Safety and Health Administration (OSHA) for information about the tower's collapse. In the course of its investigation, OSHA interviewed several witnesses, including employees of the companies which were employed to install the Channel 24 antenna and coaxial line.

Thereafter, plaintiff instituted suit in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, against,

*inter alia,* Jampro, Tower Maintenance, and Channel 24, to recover the damages it sustained resulting from the collapse of the tall tower.

On August 13, 1973, OSHA filed two citations for alleged occupational safety and health violations against Jampro. OSHA then initiated proceedings before the Occupational Safety and Health Review Commission, OSHRC Docket No. 4456, but these were subsequently concluded by stipulation.

On March 2, 1977, plaintiff, by counsel, made a formal request under the terms of the Freedom of Information Act (FOIA) for seven categories of information obtained by OSHA in its investigation of the tall tower collapse. Although OSHA disclosed some portions of this information to plaintiff, thirteen witness statements were provided with substantial deletions. Plaintiff was later informed that certain portions of the witness statements were deleted in order to prevent "an unwarranted invasion of privacy and/or disclose the identity of a confidential source." On March 2, 1977, plaintiff made a formal request, pursuant to the terms of the FOIA for the entire text of such witness statements and the identity of the individuals who made them. This request was denied to the extent that such disclosure would reveal the identity of the interviewees. Plaintiff pursued its administrative remedies with the Department of Labor, apparently seeking only the identity of the person or persons who had made two particular statements to the OSHA investigator. In a subsequent letter, the plaintiff was informed that the requested information was exempt from disclosure, pursuant to exemption 7(D) of the FOIA.

In order to obtain the identities of the people who made the statements, plaintiff brought this action on September 9, 1977, to enjoin the defendants further from withholding the requested information.

---

1. Although both parties have moved for summary judgment, it appears to the Court that there might be a factual issue in dispute as to whether the entire text of the documents in issue have been disclosed. Because plaintiff's main concern is the disclosure of the identity of the interviewees, and because of this Court's

resolution of the identity issue, the Court will grant summary judgment to defendant subject to the plaintiff being allowed to indicate to the Court that it wishes to challenge the defendant's assertion that the entire texts of the statements have already been disclosed.

## II. DISCUSSION

The defendants argue that exemption 7(D) of the FOIA allows the defendants to withhold the identity of the interviewees [2] who made the two statements involved here to the OSHA investigators. The plaintiff opposes the application of this exemption in this case on the ground that an interviewee is not a "confidential source" within the meaning of the exemption.

Exemption 7(D) exempts from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . disclose the identity of a confidential source . . ." 5 U.S.C. § 552(b)(7)(D). Both parties appear to agree that the two documents in issue are "investigatory records compiled for law enforcement purposes." The key issue, therefore, is whether an interviewee is a "confidential source."

▮ The burden of proof is on the government agency asserting a privilege under the FOIA. 5 U.S.C. § 552(a)(4)(B). The Conference Report to the 1974 amendments to the FOIA, which altered exemption 7(D) to its present form, indicates that an agency may meet this burden of proof by proving *either* that the interviewee provided information "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Conf.Rep. No. 93–1380, 93rd Cong., 2d Sess. 13 (1974).

▮ In this case, the Court finds that the defendants have not met their burden of showing that an "express assurance of confidentiality" was given.[3] However, the Court finds that the "circumstances from which such an assurance could reasonably be inferred" exist in this case.

In *Kaminer v. NLRB,* 90 LRRM 2269 (S.D.Miss.1975), the court held that statements taken by an NLRB agent in the course of an investigation into an unfair labor practice were exempt under exemption 7(D) because they were given under circumstances from which an assurance of confidentiality could reasonably be inferred. After noting that the effectiveness of an agency would be seriously jeopardized if individuals could not confidentially bring facts to the agency's attention, the Court adopted a "common sense" approach [4] to this exemption.

---

**2.** For the sake of clarity, the Court will use the plural form even though both statements in issue may have been made by the same interviewee.

**3.** The affidavits submitted indicate that, although the Compliance Operations Manual of OSHA instructs investigators to do so, the investigator in this case cannot recall whether he, in fact, did give the interviewees an express assurance of confidentiality. *See* Affidavit of Donald P. Gardner, at 2 (December 22, 1977). The fact that Mr. Loren H. Williams' affidavit indicates that he was given an express assurance of confidentiality is insufficient to prove an express assurance because the defendants have not established, *in camera* or otherwise, that the statements in issue were made by Mr. Williams. However, this affidavit does suggest that if the plaintiff is correct in asserting that Mr. Williams made the statements in issue, then the name of the declarant is protected from disclosure because the statements were made under an express assurance of confidentiality.

**4.** The origin of this "common sense" approach is relevant to the issue before the Court. This approach was approved by the Fifth Circuit

Court of Appeals in *Evans v. Department of Transportation,* 446 F.2d 821 (5th Cir.), *cert. denied,* 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1971) (and cited with approval in *Mitsubishi Electric Corp. v. U.S. Department of Justice,* 1 Trade Cases ¶ 61,356, at 71,263 (D.D.C. 1977)). There, an unnamed individual made statements to the Federal Aviation Agency that the plaintiff, a commercial pilot, was unfit to fly. Plaintiff brought suit under the FOIA, seeking the identity of this declarant. At that time, the FOIA did not contain the "confidential source" exemption found in the 1974 amendments. However, the Act did exempt from disclosure "investigatory files compiled for law enforcement purposes . . . ." The Fifth Circuit, recognizing that one of the primary purposes of this exemption was to protect confidential sources, found the identity of the declarant exempt from disclosure because "Congress could not possibly have intended" to require disclosure when the "safety of millions of the general public" would, thereby, be jeopardized. The Court finds that the health and safety of millions of workers, sought to be protected by OSHA's investigative procedures, compel the same result here.

The Court finds that this is also a case in which "common sense" dictates that the Board is required to maintain the confidentiality of its informers. The Board's investigatory function depends for its existence upon information supplied by individuals who in many cases *would suffer severe detriment if their identities were known.* Thus, the Board must be permitted to maintain the confidentiality of its sources. Exemption 7(D) of the newly amended F.O.I. Act recognizes this necessity.

90 LRRM at 2272 (emphasis added). This is clearly consistent with the stated purpose of the term "confidential source," which was to protect "concerned citizens who give information to enforcement agencies and desire their identity to be kept confidential." 120 Cong.Rec. 9330 (1974).

Similarly, the circumstances in which OSHA interviews are conducted necessitate confidentiality because, otherwise, employees, fearing retaliation, would be hesitant to give information adverse to their employers' interests. *See Mitsubishi Electric Corp. v. U.S. Department of Justice,* 1 Trade Cases ¶ 61,356, at 71,263 (1977). OSHA's investigatory function is dependent "upon information supplied by individuals who in many cases would suffer severe detriment if their identities were known." *Kaminer, supra.* Congressional sensitivity to this problem is evidenced by a provision in the Occupational Safety and Health Act which attempts to provide employees with a remedy for overt retaliation. *See* 29 U.S.C. § 660(c). In fact, Senator Hart, who sponsored the 1974 FOIA amendments, had included in the Congressional Record a letter supporting these amendments [5] which expressly stated:

Under [exemption 7], information of vital interest to the public could be kept secret —e.g. inspection reports by inspectors under the Occupational Safety and Health Act concerning safety in factories and other work places; . . . [The] amendment will permit this kind of information to be made public with appropriate safeguards for individual rights and the *confidentiality of informants* and investigative procedures.

120 *Cong.Rec.* 16616 (1974) (emphasis added). Thus, Congress clearly intended to protect the identity of interviewees in OSHA investigations. Accordingly, the Court finds that this case presents circumstances from which an assurance of confidentiality can reasonably be inferred and, therefore, the identity of the interviewees are properly withheld under exemption 7(D) of the FOIA. *See Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d 724, 733 (5th Cir. 1977) (employee-employer context may provide circumstances from which assurance of confidentiality can be inferred); *Luzaich v. United States,* 435 F.Supp. 31, 35 (D.Minn. 1977) (implied pledge of confidentiality inferred without agency's submission of affidavit because of circumstances); *Amway Corp. v. FTC,* 1 Trade Cases ¶ 60,798, at 68,443 (D.D.C.1976) (identities of distributors, who complained about certain aspects of their relationship with plaintiff, are exempt because it can be reasonably inferred that these sources expected to be accorded confidentiality).

█ In holding exemption 7(D) applicable here, the Court is well aware of the line of cases that hold that a person is not a "confidential source" if he might later be called to testify by the agency. *See Poss v. NLRB,* 565 F.2d 654 (10th Cir. 1977); *Marathon LeTourneau Co., Marine Div. v. NLRB,* 414 F.Supp. 1074, 1084 (S.D.Miss. 1976); *Climax Molybdenum Co. v. NLRB,* 407 F.Supp. 208, 209 (D.Colo.1975), *aff'd on other grounds,* 539 F.2d 63 (10th Cir. 1976). The same line of cases refuses to apply the "potential witness" rule when a stipulation is reached or the interviewee will not testify. *See Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d at 734 n.32 (5th Cir. 1977);

---

**5.** Although the letter supported an earlier version of the adopted 1974 amendments, which used the term "informer," rather than "confidential source," the reason for this change was to enlarge the scope of the exemption—not to narrow it. *See* Conf.Rep. No. 93–1380, 93rd Cong., 2d Sess. 13 (1974). Thus, materials exempt under the amendment's earlier version are certainly exempt under the adopted version.

*Marathon LeTourneau Co., Marine Division v. NLRB,* 414 F.Supp. at 1084 (S.D.Miss. 1976). In this case, the interviewees were potential witnesses when they made statements to the OSHA investigator. However, because of a stipulation, the interviewees were not called to testify, nor will they ever be. Thus, if the Court were to apply the aforementioned line of cases, the Court could find that the interviewees are "confidential sources" because they will never testify.

The Court will not, however, apply the "potential witness" rule because it does not, in this Court's opinion, comply with the purpose of exemption 7(D), the legislative history of the exemption, and the interpretation courts have given the FOIA. The "potential witness" rule conflicts with the fundamental purpose of exemption 7(D), the enhancement of agencies' enforcement abilities by permitting them to withhold the names of persons who provide enforcement-related information. Agencies, such as OSHA, depend in the execution of their enforcement functions upon information provided by third parties; but such third parties would often be reluctant to provide enforcement-related information if their identities were likely to be made public. For this reason, the "potential witness" rule would have a severe detrimental impact on OSHA's enforcement capability. Because it is necessary in the effective exercise of its enforcement function for the agency to be *able* to call as a witness in an agency proceeding anyone who will strengthen the agency's case, all interviewees could be potential witnesses and OSHA would never be able to give an assurance of confidentiality without having to commit itself at the outset of an investigation as to who will and who won't be called to testify at a subsequent proceeding. The "potential witness" rule would thus require the agency to sacrifice one of its legitimate enforcement tools—*either* the ability to protect the confidentiality of an interviewee's identity *or* the ability to call such an interviewee as a witness—in order to employ another enforcement tool. The Court is confident that Congress did not intend to create such a dilemma for agencies.

Furthermore, the legislative history of the exemption indicates that the exemption was intended to apply even when the confidential source is a potential witness. An earlier version of the 1974 amendments used the term "informer" rather than "confidential source." This change, as has already been pointed out, was made to broaden the exemption to include more than paid informers. *See* Conf.Rep. No. 93–1380, 93rd Cong., 2d Sess. 13 (1974). Thus, informers were meant to be included in the exemption. In a criminal investigation, informers may also be said to be potential witnesses in that the prosecution may later wish to put the informer on the stand to testify. Therefore, the "potential witness" rule would exclude informers in criminal cases from the ambit of exemption 7(D), a result clearly contrary to Congress' intent.

Moreover, the potential witness rule is inconsistent with the overall scheme of the FOIA. The fact that Courts have interpreted the FOIA to be permissive, rather than mandatory, suggests that an assurance of confidentiality—even one of total anonymity—does not preclude the agency from deciding to release the information at any time. *See Charles River Park "A", Inc. v. HUD,* 171 U.S.App.D.C. 286, 519 F.2d 935, 943 (1975). Thus, no assurance of confidentiality is, in a sense, absolute. The agency's decision to disclose the identity of the interviewee in an enforcement proceeding may be viewed as the agency's decision to release the information that would otherwise be protected by the FOIA from disclosure. Because this right of the agency to disclose does not render exemption 7(D) inapplicable even when an assurance of total confidentiality is given, the agency's right to release the sources' identity in a proceeding should also not render exemption 7(D) inapplicable. Accordingly, an interviewee who is a potential witness should be considered a "confidential source" within the meaning of exemption 7(D). *See Furr's Cafeterias, Inc. v. NLRB,* 416 F.Supp. 629, 631 (N.D.Tex.1976) (exemption 7(D) exempts identity of witnesses even though affiants were assured confidentiality only until NLRB hearing).

### III. CONCLUSION

The Court holds that the names of persons who gave statements to investigators from the Occupational Safety and Health Administration are exempt from disclosure under exemption 7(D) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(D). Accordingly, the Court will grant the defendants' motion for summary judgment.

An Order in accordance with the foregoing will be issued of even date herewith.