**NEMACOLIN MINES CORPORATION, a corporation, Plaintiff,**

v.

**NATIONAL LABOR RELATIONS BOARD et al., Defendants.**

Civ. A. No. 78–953.

United States District Court, W. D. Pennsylvania.

March 22, 1979.

522

Henry McC. Ingram, Pittsburgh, Pa., for plaintiff.

Aileen Armstrong, Asst. Gen. Counsel for Litigation, N.L.R.B., Washington, D. C., for defendants.

## MEMORANDUM

McCUNE, District Judge.

Petitioner, Nemacolin Mines Corporation (Nemacolin) seeks the disclosure of a statement made by one of its employees to an investigator for the respondent, the National Labor Relations Board (NLRB). The statement was collected in the course of the NLRB's investigation of an unfair labor practice charge against Nemacolin. The investigation, prosecution, and enforcement of the underlying unfair labor practice charge has been completed.

Nemacolin maintains that disclosure is required by the Freedom of Information Act, 5 U.S.C. § 552, et seq., (FIOA). The NLRB argues that the statement is exempt from the FIOA by reason of exemptions 5, 6, and 7 of the FIOA, 5 U.S.C. § 552(b)(5)(6) and (7). This case is novel. It differs from the more common attempt to use the FOIA to expand administrative discovery, an attempt barred by the recent Supreme Court decision of *NLRB v. Robbins Tire and Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). This case requires reconciliation of the FOIA with long established investigatory procedures of the NLRB. The public interest in disclosure of documents upon which governmental decisions rest must be balanced with the need of the NLRB to preserve informant confidentiality which encourages citizens to come forward with pertinent information. We find relevant exemptions 7(A) and 7(D) of the FOIA.[1] For the reasons which follow, we find disclosure of the requested statement proper.

### Exemption 7(A)

Exemption 7(A) exempts from FOIA disclosure:

"(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings . . ." 5 U.S.C. § 552(b)(7)(A).

The statement sought by Nemacolin obviously falls under "investigatory records compiled for law enforcement purposes." Whether its disclosure would "interfere with enforcement proceedings," however, is contested.

Nemacolin argues that there can be no interference with enforcement proceedings when the proceedings to which the statement relates are closed. The NLRB argues that, even though the unfair labor practice proceedings against Nemacolin are closed, disclosure would interfere with future NLRB investigations at Nemacolin and elsewhere, since the NLRB could no longer promise any sort of confidentiality to informants. The NLRB, therefore, interprets enforcement proceedings to mean proceed-

---

1. Only defendant's arguments relating to exemptions 7(A) and 7(D) are discussed. Other exemptions raised by the NLRB do not apply. These arguments are therefore not considered.

ings in general. Nemacolin interprets enforcement proceedings to mean only the proceeding for which the statement was prepared.

No appellate court has considered the question of whether post-enforcement disclosure of statements made to the NLRB while investigating an unfair labor practice charge is barred by exemption 7(A) in its present form. Legislative history of exemption 7, however, illuminates the proper scope of the exemption.

Exemption 7, as originally enacted, was much broader in scope than it is at present. The original exemption allowed disclosure of " 'investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency'." 80 Stat. 251, as quoted in *Wellman Industries, Inc. v. NLRB,* 490 F.2d 427 (4th Cir. 1974). Many courts, faced with the clear import of the text of the original exemption, applied it to all investigatory files, whether closed or open. See, *Weisberg v. U. S. Department of Justice,* 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973); *Aspin v. Department of Defense,* 160 U.S.App.D.C. 231, 237, 491 F.2d 24, 30 (1974); *Ditlow v. Brinegar,* 161 U.S.App.D.C. 154, 494 F.2d 1037 (1974); *Center for National Policy Review on Race and Urban Issues v. Weinberger,* 163 U.S.App.D.C. 368, 502 F.2d 370 (1974); *Wellman Industries, Inc. v. NLRB, supra;* and *Evans v. Department of Transportation,* 446 F.2d 821 (5th Cir. 1971). Indeed, the central issue of many of these cases in construing the original exemption was merely whether the documents sought were investigatory files. No inquiry was made into the need for continued secrecy in individual circumstances. The impact of the exemption was to preclude FOIA disclosure of investigatory materials, regardless of any real need for their retention.

Congress became alarmed at the wooden interpretation exemption 7 was given by some courts, and amended the statute in 1974. Administration of the Freedom of Information Act, H. R. Rep. No. 92–1419 (1972). The new language of the exemption, *supra,* focuses not upon whether a file

is investigatory, but rather upon the interference with governmental litigation which would result from disclosure. This change precludes a mechanical application of the exemption to all investigatory records, whether litigation has been closed or is open when disclosure is sought. Inquiry must be made into the amount of interference disclosure will cause in each situation.

The restrictive amendment of the exemption is indicative of a Congressional intention to limit the scope of the exemptions. The fact of amendment alone, however, does not lend strong support to any inference concerning the interpretation of the text of that amendment. For this we must turn to precedent construing the amended version of exemption 7.

The amended exemption 7(A) has recently been considered by the Supreme Court in *NLRB v. Robbins Tire and Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). *Robbins Tire* concerns the disclosure of statements similar to that considered here *before* the unfair labor practice hearing, rather than after the file has been closed. Despite this critical distinction, *Robbins Tire* is relevant to the issue before us.

*Robbins Tire* holds that statements made to NLRB investigators prior to an unfair labor practice charge hearing are within the parameters of exemption 7(A). This holding is carefully limited to pre-hearing disclosure. The *ratio decidendi* of the holding, however, supports an inference that post hearing disclosure is not barred by exemption 7.

The court finds the purpose of exemption 7 through reference to its legislative history. The court concludes:

"Foremost among the purposes of this Exemption was to prevent 'harm [to] the Government's case in court,' by not allowing litigants 'earlier or greater access' to agency investigatory files than they would otherwise have." (citations omitted) 437 U.S. 214 at 224–225, 98 S.Ct. at 2318.

Throughout the legislative history noted by the court in support of this conclusion, reference was consistently made to interference with particular enforcement proceedings. The opinion of the court is based on a presupposition that exemption 7(A) concerns only the proceedings for which the documents sought were prepared or collected. We consider this presupposition to be a tacit approval of Nemacolin's position.

*Robbins Tire* is not the only precedent which tacitly supports Nemacolin's position. The Court of Appeals for the Third Circuit also accepts a restrictive interpretation of the term "enforcement proceedings." In *Au, and Son v. NLRB*, 538 F.2d 80 (3d Cir. 1976) the circuit considered the same issue presented in *Robbins Tire*. Similar grounds were relied upon in reaching the same conclusion as the *Robbins* court. The circuit carefully structured the opinion to apply exemption 7(A) only to pre-hearing disclosure. The opinion presupposes enforcement proceedings to refer only to the proceedings for which the investigation was conducted. See also, *Title Guarantee Co. v. NLRB*, 534 F.2d 484 (2d Cir. 1976).

■ Given the thrust of *Robbins Tire, Au,* and other precedent, as well as the legislative history and purpose of the FOIA, we conclude exemption 7(A) does not apply to the statement sought by Nemacolin. Where the administrative agency has no intention to use statements in later enforcement proceedings, there are no "enforcement proceedings" which disclosure could disrupt.

It cannot be denied that this decision may interfere with future enforcement proceedings, since the NLRB can no longer, as a matter of course, promise all witnesses confidentiality beyond the time of the hearing on the underlying unfair labor practice charge. This argument, however, is properly considered as a part of exemption 7(D) which concerns confidential informants specifically. Since a separate exemption is granted to preserve confidentiality, we do not consider the infiltration of arguments based on confidentiality into exemption 7(A) to be proper.

## Exemption 7(D)

■ Exemption 7(D) exempts from disclosure investigatory records which "disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). The exemption allows an agency to protect "concerned citizens who give information to enforcement agencies and desire their identity to be kept confidential." 120 Cong.Rec. 9330 (1974). The exemption, however, should not enable an agency to suppress any statement made to it through the arbitrary designation of all statements as confidential.

The present policy of the NLRB is to promise confidentiality to all persons making statements to it. NLRB Case Handling Manual, Part I, § 10058.4. The confidentiality is conditional. The statement is disclosed if the declarant is later called to testify at the unfair labor practice hearing. 29 C.F.R. § 102.118(b)(1). If the identity of the declarant is disclosed, however, he is protected from retaliation by his employer because of his testimony. See 29 U.S.C. § 158(a)(4).

In the instant case, the NLRB stipulates that the statement sought begins with the following paragraph:

"I have been given assurances by an agent of the National Labor Relations Board that the statement I am about to make will be kept confidential by the United States government unless and until I am called to testify at a hearing."

The same paragraph appears verbatim at the commencement of each statement disclosed voluntarily by the NLRB, and is uniformly inserted into statements given to the NLRB. On this basis, the NLRB asserts the statement to be made by a confidential source.

Conditional confidentiality, as granted here, does not create a justifiable expectation of confidentiality after the close of enforcement proceedings. When faced with this statement and the propriety of applying exemption 7(D), Judge Snyder, in *Mylan Pharmaceuticals Inc. v. NLRB*, 407 F.Supp. 1124 (W.D.Pa.1976) held:

"'All of the persons interviewed in the course of an N.L.R.B. investigation are potential witnesses whose identity will

ultimately be disclosed to a respondent if they are called to testify. I see no basis for considering such persons to be confidential sources within the meaning of exemption (7)(D) . . .'" 407 F.Supp. at 1127, quoting *Climax Molybdenum Co. v. NLRB,* 407 F.Supp. 208 at 209 (D.Colo.1975).

Any declarant making a statement to the NLRB recognizes that he has no control over whether his statement will be disclosed. He can rely on confidentiality until the time of the hearing. He cannot expect to remain anonymous after the hearing, since his statement can be disclosed on the decision of the government. He is therefore not a confidential source within the meaning of exemption 7(D).

In coming to this conclusion, we reject the reasoning of *T. V. Tower, Inc. v. Marshall,* 444 F.Supp. 1233 (D.D.C.1978). In that case, exemption 7(D) was found to apply to similar statements because:

"Agencies, such as OSHA [and the NLRB] depend in the execution of their enforcement functions upon information provided by third parties; but such third parties would often be reluctant to provide enforcement-related information if their identities were likely to be made public. . . . Because it is necessary in the effective exercise of its enforcement function for the agency to be *able* to call as a witness in an agency proceeding anyone who will strengthen the agency's case, all interviewees could be potential witnesses and OSHA [or the NLRB] would never be able to give an assurance of confidentiality without having to commit itself at the outset of an investigation as to who will and who won't be called to testify at a subsequent proceeding." 444 F.Supp. at 1237 (emphasis in original).

These fears would be properly raised if it were not the policy of the NLRB to grant blanket confidentiality to all statements made in the course of an investigation. The *T. V. Tower* opinion recognizes not all declarants require confidentiality in stating that "third parties would *often* be reluctant to provide . . . information if their identities were likely to be made

public." (emphasis added). Confidentiality should be given to the reluctant upon request. If the NLRB granted confidentiality to declarants when necessary in their discretion, based on the facts of each case, a different question would be presented. The *T. V. Tower* argument would be more convincing. We find, however, that exemption 7(D) requires the grant of confidentiality to be made on the basis of good faith discretion, not on the basis of arbitrary rule, as the grant was made in this case.

A different case would be presented as well if we were not convinced the declarant is protected from retaliation by his employer. We note that this declarant is afforded the same protection from retaliation as a witness who testified before the NLRB. See 29 U.S.C. § 158(a)(4). Since the declarant could expect, at the time his statement was given, to be called as a witness by the NRLB, his justifiable expectation of protection at that time is the protection given to a witness. As a result, disclosure does not substantially compromise the justifiable expectations of the declarant.