**ABC HOME HEALTH SERVICES, INC.**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES** and Richard S. Schweiker, Secretary of Health and Human Services.

**Civ. A. No. C81–1646A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 24, 1982.

John H. Parker, Jr. and J. Marbury Rainer, of Parker, Hudson & Rainer, Atlanta, Ga., for plaintiff.

Myles E. Eastwood, Asst. U. S. Atty., Atlanta, Ga., for defendants.

ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiff ABC Home Health Services, Inc. (ABC), filed this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel the disclosure of certain records within the defendants' possession. The action is before the court on (1) the plaintiff's motion for an order to allow a deposition and the defendants' opposition thereto; and (2) cross-motions for summary judgment, Rule 56, Fed.R.Civ.P.

## I. Statement of Facts

ABC, a certified home health agency as defined by the Health Insurance for the Aged Act (Medicare Act), 42 U.S.C. § 1395 *et seq.*, provides skilled nursing care and other services in patients' homes as authorized and directed by treating physicians. *See* 42 U.S.C. § 1395x(m) and (*o*); 42 C.F.R. §§ 405.233–.239. In this action, ABC demands the disclosure of records compiled as part of an investigation of its requests for reimbursement in accord with the Medicare Act.

Reimbursement for a home health agency's reasonable costs of providing care for Medicare beneficiaries is made by the Health Care Financing Administration (HCFA) of the defendant Department of Health and Human Services (HHS) through a fiscal intermediary, most often a private insurance company appointed to administer the Medicare program in a particular area. At the close of the agency's fiscal year, the fiscal intermediary, relying upon a cost report submitted by the agency, determines the amount due for services performed during the previous year. 42 C.F.R. § 405.-406(b). To prevent the agency's having to wait for annual reimbursement, the Medicare Act authorizes the fiscal intermediary to make interim payments, which are based upon estimates supplied by the agency. 42 U.S.C. § 1395g; 42 C.F.R. §§ 405.404 and .454. After the submission of the cost report, a retroactive adjustment is made to correct the difference between the amount the agency has received as interim payments and the amount the fiscal intermediary has determined to be the agency's actual reasonable cost. 42 C.F.R. §§ 405.-453–.454. The retroactive adjustment involves two steps: first, the fiscal intermediary makes a tentative settlement after a brief "desk review" of the cost report for obvious errors or inconsistencies. *Id.* § 405.454(f)(2). Second, the fiscal intermediary performs an audit and, if necessary,

corrects the tentative settlement. *Id.* § 405.454(f)(3). This final adjustment, often referred to as a "final settlement," is subject to reevaluation at any time within three years from the date of the adjustment. *Id.* § 405.1885(b). A settlement procured by fraud, however, may be reevaluated at any time. *Id.* § 405.1885(d).

In April 1981, Blue Cross of Georgia/Columbus, Inc. (Blue Cross), the fiscal intermediary responsible for reimbursing ABC for its costs, informed ABC that HFCA's Office of Program Integrity (OPI)[1] had instructed Blue Cross to delay settlement of ABC's 1980 cost report. Blue Cross subsequently performed a full field audit of ABC and, in September 1981, completed its settlement of the 1980 report, apparently with the approval of OPI. OPI had directed the delay of the settlement because it had recently begun an investigation into an informant's allegations about the 1980 cost report. That investigation, ABC asserts, ended sometime between the performance of the audit and the final settlement of the report. Although ABC does not directly dispute the defendants' contention that OPI is still investigating ABC's operations, ABC argues that its receipt of the final settlement demonstrates that any investigation based on allegations concerning its 1980 report have ended.

By letter dated April 20, 1981, ABC's executive director, Mr. Jack Mills, requested that OPI provide him with

> any and all documents that may be pursuant, have reference to or contain any allegations made against ABC Home Health, at any of our six locations, Jack Mills personally or any members of our Board or employees of our company that you may have in your possession at this time.

Complaint, Exh. A. After his request was denied by an HHS information officer, Mr. Mills instituted an administrative appeal,

---

1. In November 1981, OPI became the Program Integrity Branch (PIB) of the HHS Division of Quality Control. *See* 46 Fed. Reg. 56928 (1981). Because the office that had been OPI continues to bear responsibility, as PIB, for investigation and referral of specific cases of fraud and abuse in the Medicare program, the court for convenience will use the name OPI to refer to the office involved in investigation of ABC.

which was granted in part and denied in part by the HCFA Administrator on August 14, 1981.[2] The Administrator found that a law enforcement investigation of ABC was in progress, that the release of some of the records would interfere with that investigation, and that therefore such documents fell within the 5 U.S.C. § 552(b)(7)(A) exemption for "investigatory records compiled for law enforcement purposes ... to the extent that such records would interfere with law enforcement proceedings." The Administrator held that of the thirty-two documents initially identified and withheld, nineteen were protected by the law enforcement exemption. The remaining thirteen documents were released to Mr. Mills. Thereafter, on September 2, 1981, ABC filed this action.

While preparing a response to interrogatories served on them by ABC, the defendants apparently concluded that of the nineteen undisclosed documents, some entire documents and portions of others "would not at that stage of the investigation interfere with the investigation or any enforcement proceedings which might arise out of the investigation." Defendants' Statement of Material Facts at ¶ 6. The defendants subsequently released twelve documents in their entirety and five documents from which matter had been deleted. On March 29, 1982, in a supplement to their earlier response to ABC's interrogatories, the defendants disclosed the existence of four documents that had not appeared on the HCFA Administrator's list of documents within the scope of ABC's request. At that time, three of the additional documents were released in part; the fourth was released in its entirety. Thus, this action now involves the disclosure of three entire documents and of matter deleted from eight other documents.

II. *Motion for an Order to Allow a Deposition*

ABC seeks an order allowing it to depose Mr. Robert Bryant, a program analyst for OPI. Mr. Bryant has to some extent supervised the investigation of ABC performed by another program analyst, Mr. James Irvin. ABC contends that it was unaware of "Mr. Bryant's involvement in and control of the investigation" until Mr. Irvin testified during his deposition that Mr. Bryant had actively supervised the investigation from the start and had assumed primary responsibility for the investigation in June 1981. Brief in Support of Motion to Allow Deposition (Plaintiff's Deposition Brief) at 1. Defendants oppose ABC's motion on the ground that the time for discovery has expired and that ABC has not justified its failure to take the deposition earlier.

■ The court will deny the motion. In their answer to an interrogatory that called for identification of "each person ... involved in any manner in initiating, processing, or concluding the alleged enforcement proceedings," the defendants identified by name three persons: Mr. Irving, Mr. Bryant, and their chief, Mr. Don Simmons. The defendants clearly described Mr. Bryant's supervisory role, stating that any referral by Mr. Irvin for criminal or civil court action is

> routed first through Bob Bryant ... and then Don Simmons. Bob Bryant reviews the referral memorandum prepared by Mr. Irvin and approves or disapproves of the referral. He may send the case back to Mr. Irvin for further development if necessary. If he approves the referral the memorandum is sent to Don Simmons.

Defendants' Answers to Plaintiff's First Interrogatories at § I.5(A) and (B). ABC took no depositions during the time allowed by Local Court Rule 181.11. Nor has ABC filed further interrogatories. With the defendants' consent, however, ABC deposed Mr. Irvin and another OPI official after the end of the discovery time. Mr. Bryant's role in the investigation was described in more detail during Mr. Irvin's deposition on

2. Mr. Mills repeated his original FOIA request in July 1981, after Blue Cross had completed its audit of ABC. This second request was also denied, and the appeal of that denial was apparently concluded with the Administrator's opinion on August 14, 1981.

March 24, 1982, and ABC then notified the defendants that it wished to depose Mr. Bryant. Defendants declined to consent to further discovery.

ABC filed this motion on June 10, 1982, more than six months after Mr. Bryant's duties were first described; two and one-half months after the defendants filed their motion for summary judgment, which was supported by an affidavit in which Mr. Bryant stated that the investigation was continuing; and one month after ABC filed its own motion for summary judgment. The court concludes that ABC had adequate notice of the potential importance of Mr. Bryant's testimony well within the discovery period and long before it moved for summary judgment. Defendants did not conceal Mr. Bryant's familiarity with the investigation. At no time were the defendants under an obligation to disclose, as ABC suggests, that he was "the employee of Defendant *most* familiar with the facts." Plaintiff's Deposition Brief at 1. Quite plainly, ABC is the victim not of the defendants' conduct, but of its own failure to diligently pursue discovery.

### III. *Cross-motions for Summary Judgment*

In support of their motion for summary judgment, the defendants argue that all of the withheld material is protected by the section 552(b)(7)(A) enforcement proceeding exemption and that all but one of the disputed documents are protected by FOIA exemptions for matter whose release would constitute an unwarranted invasion of personal privacy, 5 U.S.C. § 552(b)(7)(C), or would disclose the identity of a confidential source, *id.* § 552(b)(7)(D). ABC contends, in support of its motion for summary judgment, that the investigations to which the remaining documents relate ended with the final settlement of its 1980 cost report and that the defendants' informant did not make a timely request for confidentiality. ▮▮▮ Congress created the law enforcement exemptions in section 552(b)(7) to prevent premature disclosure of investigatory materials which might be used in a law enforcement action. *FBI v. Abramson,* —— U.S. ——, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982). To obtain the protection of any of these exemptions, the defendants must show, first, that each requested document was part of an investigatory record compiled for law enforcement purposes, and, second, that the release of the withheld material will have one of the results specified in section 552(b)(7)(A), (C) and (D). *Id.* The parties do not dispute that the documents at issue were compiled as part of an OPI investigation into ABC's operations. The court's inquiry therefore concerns whether release of the withheld material would interfere with OPI enforcement proceedings, would constitute an unwarranted invasion of personal privacy, or would disclose the identity of OPI's confidential source.

The court notes initially that an FOIA plaintiff faces the difficult task of arguing the applicability of each exemption without the benefit of having read the disputed documents. Mindful of this handicap, the Fifth Circuit has held that once a party has shown that a government agency possesses particular documents within the scope of the request, a district court cannot rely solely upon the affidavits of the officials who seek to prevent disclosure, and must base its findings on specific evidence of the content of the documents. *Stephenson v. IRS,* 629 F.2d 1140, 1145 (5th Cir. 1980). Accordingly, the defendants have submitted the disputed documents for *in camera* inspection.

Having reviewed the affidavits of the parties and the documents submitted, the court concludes that the withheld material is protected by the section 552(b)(7)(A) exemption for material whose release would interfere with law enforcement proceedings. The court will therefore grant the defendants' motion for summary judgment and will deny ABC's motion for summary judgment.

▮▮▮ ABC's assertion that release of the withheld material will not interfere with enforcement proceedings is based upon (1) a letter, dated March 31, 1981, in which Mr.

Frank White, a regional director for OPI, directed Blue Cross "to make no settlement until a complete review by your office and ours has been conducted," Brief of Plaintiff in Support of Its Motion for Summary Judgment, Exh. B; and (2) a notation by Mr. Irvin in an OPI contact report, dated March 30, 1981, that he had instructed Blue Cross to delay tentative settlement until it received "instructions from us concerning the resolution of this case." *Id.,* Exh. C. ABC contends that these two statements and the occurrence of final settlement, after an audit of the questioned cost report, together create "a clear implication that the investigation against ABC has been concluded, notwithstanding the affidavits of Robert S. Bryant that the investigation is ongoing." *Id.* at 2. ABC thus relies on an inference that OPI would not have permitted the settlement of the 1980 cost report unless it had concluded its investigation into the allegations that prompted the review of ABC's report.

ABC's assertion is deficient in two respects. First, ABC draws too broad an inference from the settlement of the cost report. The withheld material, which consists of both the informant's name and the results of the OPI investigation of his allegations of particular wrongdoings by ABC, was relevant not only to the determination of whether to settle ABC's cost report, but to future proceedings as well. As noted above, final settlement of the cost reports may be reevaluated at any time within three years and there is no similar limitation on actions for fraud. Therefore, the most the court can infer from the settlement of the cost report is that, on the basis of what it had learned so far, OPI decided to no longer delay settlement. ABC has adduced no evidence other than the final settlement to counter the assertions of Mr. Bryant that the investigation continues. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Affidavit of R. Bryant at ¶ 1; Defendants' Brief in Response to Plaintiff's

Motion for Summary Judgment, Affidavit of R. Bryant at ¶ 2.

Second, the court cannot, as ABC apparently suggests it should, equate an "investigation" with an "enforcement proceeding" and thus limit the exemption to the duration of the investigation of each separate allegation that could lead to an enforcement proceeding. The exemption is designed to protect contemplated proceedings, not particular allegations. The continuing investigation of ABC may lead to further administrative action, or perhaps to a civil or criminal court proceeding, as the result of OPI's initial investigation into the informant's allegations concerning the 1980 cost report. Clearly, further proceedings are not foreclosed by the settlement of the cost report, and the continuance of the investigation is sufficient indication that such proceedings are contemplated. Therefore, any part of the withheld material that would interfere with such proceedings is exempt from disclosure.

The court has carefully reviewed the disputed documents *in camera* and concludes that release of the withheld material could interfere with future proceedings involving ABC. The defendants have withheld only the informant's name and the particular allegations whose release would enable ABC to identify the informant or alert ABC to the precise charges against which it may some day have to defend. Disclosure of that kind of information could cause a timid informant to cease cooperation with investigators and could aid the subject of the investigation in efforts to impede further discovery of its wrongdoings through, for example, alteration or destruction of evidence or the coercion of witnesses. The court does not suggest that ABC intends to interfere with further OPI investigations. It is sufficient that some kind of interference is a possible result of the disclosure of the withheld material. The defendants have therefore properly invoked the section 552(b)(7)(A) exemption.[3] In light of this

---

3. The court notes that the section 552(b)(7)(A) exemption applies only so long as the defendants continue to contemplate enforcement proceedings. *See Nemacolin Mines Corp. v. NLRB,* 467 F.Supp. 521, 524–25 (W.D.Pa.1979).

conclusion, the court need not address the defendants' arguments concerning the other asserted exemptions.

Accordingly, the defendants' motion for summary judgment is GRANTED. The plaintiff's motion for summary judgment is DENIED. The plaintiff's motion for an order to allow the deposition of Robert Bryant is DENIED. The court notes that the parties stipulated to a deferral of the attorney's fees dispute until resolution of the summary judgment issues. Therefore, entry of final judgment in this matter is DEFERRED until after resolution of the attorney's fees issue.

IT IS SO ORDERED.