### UNITED TECHNOLOGIES CORPORATION, Appellant,

### v.

### NATIONAL LABOR RELATIONS BOARD, Appellee.

### No. 35, Docket 85–6106.

United States Court of Appeals, Second Circuit.

Argued Sept. 20, 1985.
Decided Nov. 18, 1985.

Joseph C. Wells, Hartford, Conn. (Farmer & Wells, Hartford, Conn., of counsel), for appellant.

Robert C. Bell, Washington, D.C. (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Margery E. Lieber, Deputy Asst. Gen. Counsel for Sp. Litigation, Corinna Lothar Metcalf, Atty., N.L.R.B., Washington, D.C., of counsel), for appellee.

Before LUMBARD, OAKES and NEWMAN, Circuit Judges.

LUMBARD, Circuit Judge.

United Technologies Corp. ("UTC") appeals from a summary judgment in the District Court for Connecticut in favor of the National Labor Relations Board exempting the Board from compulsory disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1982), of the identities of an informant for the Board and of a Board agent. We affirm.

This case grows out of a dispute between UTC and a union of security guards that sought to represent the guards at UTC's Hamilton Standard Division in Windsor Locks. On September 16, 1983, the union filed charges against UTC with the NLRB's subregional office in Hartford, alleging unfair labor practices by UTC in connection with an election to certify the union as the representative of the Hamilton Standard security guards. After an investigation, on March 14, 1984, the Officer-in-Charge of the subregional office, Peter Hoffman, issued a complaint against UTC. A hearing was set before an NLRB administrative law judge for May 7, 1984.

At a hearing preparation meeting on April 27, a UTC employee provided a Board agent with some UTC documents, including a memorandum and exhibits prepared by UTC for use at the May 7 hearing. These materials had apparently been copied without UTC's permission. When the Board agent determined the nature of the documents, he immediately returned them to the UTC employee and explained to him the seriousness of the unauthorized possession of an employer's materials prepared for litigation.

On May 3, the union, for unstated reasons, notified the NLRB subregional office that it wished to withdraw the unfair labor practice charge. The office postponed the hearing scheduled for May 7. On May 8 and May 10, Hoffman advised UTC that copies of its documents had been brought to the Board's April 27 hearing preparation meeting. On May 11, the NLRB's General Counsel's office approved the union's request to withdraw the charge and Hoffman dismissed the complaint.

This did not end the matter. UTC wanted to know more about the April 27 meeting, particularly the identities of the Board agent who received the documents and the UTC employee who delivered them. When Hoffman refused to reveal this information, UTC, on June 26, 1984, filed a request under the FOIA for all materials in the Board's possession that related to the unfair labor practice investigation against UTC.

The Board produced a number of documents. Most important for this litigation were two internal NLRB memoranda, dated May 9, 1984 and June 1, 1984, written by the Board agent who received the UTC materials at the April 27 hearing preparation meeting. The Board released portions of the memoranda, but deleted those portions that contained the opinions and recommendations of the Board agent and the names of the UTC employee and Board agent involved. The Board maintained that this information and any other documents withheld were exempt from UTC's FOIA request under Exemptions 5, 6, 7(C), and 7(D) of the FOIA. However, the Board did reveal the identities of the UTC employee and the Board agent to the counsel for the union.

On July 13, 1984, UTC appealed to the NLRB General Counsel's office. Soon thereafter, the General Counsel's office ordered the disclosure to UTC of some previously withheld materials, but refused to

order the disclosure of the names sought by UTC.

UTC then brought suit in the district court to compel compliance with its FOIA request. Both parties agreed that the case could be decided on their cross-motions for summary judgment. UTC's papers revealed that it remained primarily interested in the names of the UTC employees who were prospective witnesses for the Board in the unfair labor practice proceedings and in unredacted copies of the May 9 and June 1 memoranda which would reveal the identities of the people involved in the April 27 meeting.

On March 28, 1985, Judge Blumenfeld denied UTC's motion and granted the Board's cross-motion. He based his decision on Exemptions 5 and 7(D) of the FOIA and did not pass on the Board's claim of Exemptions 6 and 7(C).

■ We affirm on the basis of Exemption 7(D).[1]

*The identities of the employee-informants.* 5 U.S.C. § 552(b)(7)(D) exempts from disclosure under the FOIA "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... disclose the identity of a confidential source...." The Board claims, and the district court held, that the identities of employee-informants, including the identity of the employee who delivered the stolen UTC documents, are protected under this Exemption. UTC contends that employee-informants who are potential witnesses at an unfair labor practice hearing against an employer are not "confidential sources" under the statute.[2]

■ A source is considered "confidential" under Exemption 7(D) if he or she provides information "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." S.Rep. No. 1200, 93d Cong., 2d Sess. 13 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad. News 6267, 6291.[3] The Board did not claim that the UTC employees who gave information at the pre-hearing investigation were given an express assurance of confidentiality. The district court found, however, that these employees, including the employee involved in the theft of UTC's documents, had a reasonable expectation of confidentiality since an assurance of confidentiality could be reasonably inferred from the circumstances in which they gave information to the Board.

■ Whether the circumstances show an implied assurance of confidentiality that would exempt from disclosure documents containing the identity of a confidential source is ordinarily a question of fact. *Keeney v. FBI*, 630 F.2d 114, 119–20 (2d Cir.1980). Judge Blumenfeld found that in

---

1. We, therefore, do not reach the question of the propriety of the Exemption 5 ruling.

2. In a footnote to its brief, UTC questions whether the May 9 and June 1 memoranda constitute "investigatory records compiled for law enforcement purposes." UTC suggests that the memoranda are not part of the investigation into UTC's employment practices, but are merely post-investigatory reports or wrap-ups of the events that occurred at the April 27 meeting.

We do not accept this argument. The May 9 memorandum was written before the charges against UTC were formally dropped on May 11. The June 1 memorandum, occasioned by a letter written by UTC's counsel to the Board, is largely repetitive of the first memorandum. *Cf. FBI v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (information initially contained in a record made for law enforcement purposes continues to meet the threshold requirements of Exemption 7 where that recorded information is reproduced or summarized in a new document prepared for a non-law enforcement purpose). Both memoranda primarily contain information obtained as part of the investigatory phase and pre-hearing strategy of the Board's proceedings against UTC. The memoranda satisfy the threshold criteria for Exemption 7.

3. *Reprinted in* Subcomm. on Government Information and Individual Rights of the House Comm. on Government Operations and Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, *Freedom of Information Act and Amendments of 1974* (P.L. 93–502), *Source Book: Legislative History, Texts, and Other Documents* 230 (Joint Comm. Print 1975) [hereinafter cited as *"1975 Source Book"*].

light of the protracted and bitter struggle between UTC and the union,[4] pro-union employees had reason to believe that the Board would keep their identities and their statements about UTC confidential. *See also L & C Marine Transport, Ltd. v. United States*, 740 F.2d 919, 924 (11th Cir. 1984) (discussing the importance of keeping informants' names confidential in OSHA investigations into employers).

▮ An employee-informant's fear of employer retaliation can give rise to a justified expectation of confidentiality. *See T.V. Tower, Inc. v. Marshall*, 444 F.Supp. 1233, 1236 (D.D.C.1978); *Kaminer v. NLRB*, 90 L.L.R.M. 2269, 2272, 78 Lab.Cas. ¶ 11,272 at 20,364–65 (S.D.Miss.1975). Certainly, the actions of the Board agent, in returning the UTC documents to the employee who delivered them and in explaining the seriousness of the situation, underscored the confidential nature of the April 27 meeting. Judge Blumenfeld's finding on this issue is supported by the record and is not clearly erroneous.

▮ UTC argues, however, that, as a matter of law, an employee-informant at a pre-hearing investigation of his employer may not be considered a "confidential source" if the employee-informant was a potential witness for the investigating agency at the hearing itself. There is a split of authority on this question. *Compare Nemacolin Mines Corp. v. NLRB*, 467 F.Supp. 521, 525 (W.D.Pa.1979) (employee who could have been called to testify at trial is not a "confidential source") *with T.V. Tower, Inc. v. Marshall*, 444 F.Supp. 1233, 1237 (D.D.C.1978) ("confidential source" status is maintained despite the fact that the employee could have been called as a witness).

The issue, then, is whether the doctrine advanced by UTC, often called the "potential witness rule", defeats the Board's claim that the UTC employees are confidential sources under Exemption 7(D).[5] We reject the potential witness rule and uphold the claim of confidentiality.

The scope of the term "confidential source" is not precisely defined in the legislative history. *See Church of Scientology of California v. United States Dept. of Justice*, 612 F.2d 417, 423 (9th Cir.1979). We have resolved questions of interpretation by looking to the common sense meaning of the terms in Exemption 7(D). *See Keeney, supra*, 630 F.2d at 117. We believe that the proper interpretation of the term "confidential source" includes an informant who is promised or reasonably expects confidentiality unless and until the agency needs to call him as a witness at trial. This interpretation is in keeping with the purpose of Exemption 7(D) and the context in which law enforcement agencies such as the NLRB gather information.

Exemption 7(D) is designed to encourage cooperation with law enforcement agencies by enabling the agencies to keep their informants' identities confidential. *See Keeney, supra*, 630 F.2d at 119 (citing *1975 Source Book*). The Exemption is particularly important to agencies, such as the NLRB, that have no independent investigatory power but rather must depend on the information provided by the charging party and its witnesses. *See NLRB v. Hardeman Garment Corp.*, 557 F.2d 559, 562 n. 8 (6th Cir.1977).

Employees are the principal, and in many cases the sole, source of the Board's information in unfair labor practice cases. Naturally, these employees are reluctant to give information unfavorable to the interests of their employers for fear of reprisal and harassment. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 240, 98 S.Ct. 2311, 2325, 57 L.Ed.2d 159 (1978); *L*

---

**4.** Judge Blumenfeld noted that the conflict between the union of security guards and UTC had generated a Board representation case, an unfair labor practice complaint, the instant lawsuit and another action presently before the district court, *Austin v. United Technologies Corp.*, Civil No. H–84–1146.

**5.** In its answer to UTC's first set of interrogatories, the Board conceded that the UTC employee who delivered the UTC documents to the Board agent was a potential witness for the Board at the unfair labor practice hearing.

& C Marine Transport, Ltd. v. United States, 740 F.2d 919, 924 (11th Cir.1984). The Board's ability to grant adequate assurances of confidentiality is therefore essential to its ability to receive information. The effect of a potential witness rule, however, would be to negate any assurance of confidentiality if it is possible that the Board might call the informant to testify at trial. This frustrates the employee's and the Board's reasonable expectations that confidentiality will be maintained unless and until there is a hearing at which the employee-informant will testify.

We are not persuaded by the contrary ruling in *Nemacolin, supra,* 467 F.Supp. at 524–25. There, the court invoked the potential witness rule to deny "confidential source" status to an employee-informant after full prosecution and enforcement of the unfair labor practice charge despite the fact that the employee-informant was never called to testify at trial. The court held that because the Board *could have* called the employee to testify at trial, he could not be considered a confidential source under Exemption 7(D). *See id.*

We reject a potential witness rule under any circumstances, *i.e.* regardless of whether the underlying enforcement proceeding has been dismissed before the hearing, is pending or has been completed. A person who is otherwise a "confidential source" should not lose that status simply because he *could have* been called or *might yet* be called as a witness. We think that Exemption 7(D) should be given a practical construction; one that reflects the realities of agencies' law enforcement capabilities.[6] An agency should be able to grant confidentiality to its sources regardless of whether the sources could have been or might be witnesses at trial.

■ We hold that UTC is not entitled to the disclosure of its employee's identity as the employee is a confidential source under Exemption 7(D).

*The identity of the Board agent.* From the discussion above it follows that those portions of the Board memoranda that identify the Board agent who received the UTC documents are also exempt from disclosure under Exemption 7(D). The statutory language states that investigatory records compiled for law enforcement purposes are immune from disclosure "to the extent" that production of the record would reveal the identity of a confidential source. We have already established that the UTC employee involved in the taking of the documents is a confidential source under the statute. UTC has provided no explanation for its desire to obtain the identity of the Board agent and we can think of none except the possibility that such disclosure would facilitate discovery of the identity of UTC's employee.

■ UTC should not be permitted to obtain through indirect means what Exemption 7(D) does not entitle it to obtain directly. As Senator Hart, the draftsman of Exemption 7(D), stated, the Exemption "protects both the identity of informers and information which may be reasonably found to lead to such disclosure." 120 Cong.Rec. 17034 (1974), *reprinted in 1975 Source Book* at 333–34. The identity of the Board agent was properly withheld as information in an investigatory record that could lead to the disclosure of a confidential source.

■ *Waiver.* The final issue presented is whether the Board waived the protection of Exemption 7(D) by disclosing to the counsel for the union the identities of the people involved at the April 27 hearing preparation meeting. We agree with the district court that there was no waiver.

Under Exemption 7(D), an agency's ability to withhold information, if it so chooses, derives from the grant of confidentiality to

---

**6.** A potential witness rule would require an agency to choose, at the outset of its investigation, which informants it *may* later call to testify and which informants it will *definitely not* call. Only the latter would be guaranteed confi-

dentiality. We agree with the court in *T.V. Tower* that Congress did not intend to create such a dilemma for agencies. *T.V. Tower, Inc. v. Marshall, supra,* 444 F.Supp. at 1237.

the source of the information. The privilege belongs to the beneficiary of the promise of confidentiality and continues until he or she waives it. *See Radowich v. United States Attorney, Dist. of Maryland,* 658 F.2d 957, 960 (4th Cir.1981); *Lesar v. United States Dept. of Justice,* 636 F.2d 472, 491 (D.C.Cir.1980). Thus, the Board's disclosure of the names to counsel for the union did not waive the availability of Exemption 7(D).

Judgment affirmed.