Herman Benjamin FERGUSON,
Plaintiff–Appellee,

v.

FEDERAL BUREAU OF INVESTI-
GATION, Defendant–Appellant.

No. 848, Docket 91–6248.

United States Court of Appeals,
Second Circuit.

Argued Jan. 9, 1992.
Decided March 9, 1992.

Steven I. Froot, New York City, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Thomas A. Zaccaro, of counsel), for defendant-appellant.

Joan P. Gibbs, New York City (Suzanne L. Shende, Center for Constitutional Rights, of counsel), for plaintiff-appellee.

Kate Martin and Mark A. Srere, Washington, D.C. (American Civil Liberties Union Foundation, of counsel), for appellee, amicus curiae.

Before KAUFMAN *, PRATT and MINER, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Defendant-appellant Federal Bureau of Investigation ("FBI") appeals from an order of the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., *Judge*, directing the FBI to release to plaintiff-appellee Herman Benjamin Ferguson, substantial portions of FBI investigatory files, including information about confidential sources, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The FBI refused to provide Ferguson, a convicted felon who seeks information to clear his name, with unredacted information compiled in its files. It claimed that the information need not be disclosed pursuant to applicable FOIA exemptions. *See* 5 U.S.C. § 552(b)(7)(C) & (D). The district court disagreed and ordered disclosure of some of this information, as well as further *in camera* submissions for future consideration of other information. A panel of this court granted the FBI's motion for a stay pending appeal of the district court's order.

## BACKGROUND

Ferguson is a former black activist who, in 1968, was convicted of conspiring to murder two civil rights leaders: Whitney Young, Jr., then Executive Director of the National Urban League, and Roy Wilkins, then National Director of the National Association for the Advancement of Colored People ("NAACP"). He was sentenced to serve a prison term of three and one-half to seven years, but was released on bond pending appeal. Upon learning that his last appeal had been denied, he fled the United States to live as a fugitive in the Republic of Guyana for over 18 years.

Before his arrest, Ferguson had been employed by the New York City Board of Education for almost twenty years in vari-

---

* Pursuant to § 0.14(b) of the rules of this court, this appeal is being determined by Judges Pratt and Miner, who are in agreement as to the opinion of the court. Judge Kaufman, who was a member of this panel and who had prepared to decide the case, unfortunately died on Febru-

ary 1, 1992, before he had an opportunity to vote on this disposition. Because both of the remaining panel members agree and do not request the designation of a third panel member, they constitute a quorum pursuant to local rule § 0.14(b).

ous positions, academic and administrative. He had been active in various civil rights and Black nationalist organizations and causes, and among other things, had been the chair of the Education Committee of the Organization of Afro–American Unity, an organization established by Malcolm X shortly before his murder.

Ferguson was arrested along with 16 other African–American activists, all alleged to be members of the Revolutionary Action Movement ("RAM"), the Black Brotherhood Improvement Association ("BBIA"), and the Jamaica Rifle and Pistol Club ("JRPC"). He and his 16 co-defendants were charged with conspiracy to commit advocacy of criminal anarchy and advocacy of criminal anarchy. He and another co-defendant were charged in a separate indictment with conspiracy to murder Young and Wilkins. He was ultimately convicted of the conspiracy to murder, and the charges under the first indictment were dropped, dismissed, or otherwise disposed of without trials or imposition of prison terms. This disposition made Ferguson suspicious either that some of his co-defendants were employed by, providing information to, or manipulated by, the FBI and/or the New York City Police Department ("NYPD"), or that the prosecution brought the criminal anarchy indictment merely to chill the defendants' expression of their political beliefs and deprive Ferguson of their testimony at his trial on conspiracy to murder.

In 1989, Ferguson returned to the United States from Guyana, and was immediately arrested. He subsequently pled guilty to bail-jumping and is serving a one-year term for that offense concurrently with the original sentence for conspiracy to murder. He recently qualified for a work release program, and now spends three nights in prison and four nights at home each week. He is employed full-time as the Chair of the Department of Black History in the school of the Resurrection Roman Catholic Church, where he is also an instructor on that subject. He also teaches part-time in New York City at one of the colleges of the City University of New York.

Ferguson filed a motion for a new trial in state court, asserting his innocence in the conspiracy to murder Young and Wilkins. This motion was denied, and his application for leave to appeal to the Appellate Division, Second Department is presently pending.

In 1980, while living in Guyana as a fugitive, Ferguson, through his attorney, had submitted a FOIA request to the FBI seeking all documents relating to him at FBI headquarters. In 1984, in response to this request, the FBI produced approximately 1000 pages of information in redacted form.

Upon his return to the United States, Ferguson made a second FOIA request to the FBI, seeking documents relating to him, not only from FBI headquarters, but also from the New York and Philadelphia field offices. The FBI disclosed to Ferguson what it characterizes as all nonexempt material, including material that had been referred for review to the Department of the Army, Department of the Navy, Bureau of Alcohol, Tobacco, and Firearms, Department of State, and Central Intelligence Agency.

In addition to pursuing the present action, Ferguson has also sought records directly from the NYPD, the agency actually responsible for the investigation that led to his arrest and subsequent conviction, under the New York Freedom of Information Law.N.Y.Pub.Off.Law §§ 84–90. On November 7, 1990, the NYPD released to Ferguson records relating to its investigation of several groups with which he was associated during the 1960s.

Much of the information he seeks focuses on the NYPD and Edward Lee Howlette, an undercover New York City policeman who infiltrated the group led by Ferguson and testified extensively at his criminal trial about the conspiracy. The reason for these requests is Ferguson's belief that the government has exculpatory material or material which could lead to exculpatory evidence. He asserts that he was framed for the conspiracy to murder Young and Wilkins, and now seeks to clear his name.

## PRIOR PROCEEDINGS

Ferguson brought this action in July 1989, seeking a preliminary injunction to compel the FBI to expedite the processing of his FOIA requests. Subsequent orders of the district court set specific deadlines with which the FBI complied. The FBI also provided Ferguson with a *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), setting forth the reasons for the FOIA exemptions claimed for the material withheld.

In May 1990, Ferguson filed a motion requesting the district court to reprocess and eliminate the redactions in the material supplied by the FBI in response to his 1980 and 1989 requests, or, in the alternative, to require the FBI to prepare a more detailed index of materials the FBI claims is exempt from disclosure. The FBI cross-moved for partial summary judgment on the ground that it had fully complied with the FOIA requirements and the district court's prior orders. By order dated December 18, 1990, the district court declined to order the FBI to conduct a new search, but ordered the FBI to submit unredacted samples of documents for *in camera* review, and otherwise withheld decision on the pending motions. Subsequently, by order dated April 22, 1991, after completing its *in camera* review of the sample documents, the district court denied the FBI's motion for partial summary judgment and denied Ferguson's motions for reprocessing his FOIA requests and to compel discovery, subject to later renewal. 762 F.Supp. 1082. The court also ordered the FBI to release to Ferguson certain categories of withheld information and to make further *in camera* submissions.

The FBI then moved, pursuant to Fed. R.Civ.P. 59(e) and 62(b), for reconsideration, clarification, and stay of the April 22 order. The district court, by order dated September 16, 1991, denied the FBI's motion in its entirety and reaffirmed its prior orders. 774 F.Supp. 815. The FBI's motion for stay pending appeal was denied by the district court, but a panel of this court granted the stay.

It is from the effects of the April 22 and September 16 orders that the FBI appeals. These orders contained specific directions to the FBI and specifically addressed the applicability of two FOIA exemptions claimed by the FBI: exemption 7(C) for the privacy interests of the source, and exemption 7(D) for confidential source identity and information. 5 U.S.C. § 552(b)(7)(C) & (D). Throughout this opinion we also refer to the directions within the two orders as "orders". Pursuant to exemption 7(D), the FBI withheld seven categories of information relating to confidential sources. Pursuant to exemption 7(C), the FBI withheld seven categories of private personal information.

The FBI appeals from the following summarized portions of the two district court orders in which the court ordered the FBI:

(1) To submit for *in camera* review further proof that the FBI had compiled information on Ferguson for a legitimate law enforcement purpose. Otherwise, the court held that the information withheld pursuant to exemption 7(D) should be disclosed to Ferguson, because it was not satisfied that the FBI had met its burden of showing a legitimate law enforcement purpose sufficient to claim the exemption.

(2) To disclose all information, the original source of which was Edward Lee Howlette, an officer of the NYPD, and the NYPD itself, notwithstanding the applicability of exemption 7(D) and their status as confidential sources.

(3) To disclose all references to Howlette's name, notwithstanding any privacy interest he may have under exemption 7(C). It stated that Howlette's privacy interest was "so diminished by his lengthy testimony and recent interviews that it cannot outweigh the public interest in disclosure."

(4) To disclose all records consisting of publicly-circulated material withheld under exemption 7(D), regardless of whether they were provided to the FBI by a confidential source. The district court concluded that the previous release of such documents created doubt as to whether they should be withheld if found in other files.

(5) To disclose all the reports of public meetings, or to explain on a document-by-document basis why, under exemption 7(D), release of any withheld reports could lead to harm, regardless of whether they were provided to the FBI by a confidential source, or to explain why exemption 7(C) could be applicable.

(6) To demonstrate why a source's privacy interest outweighed the interest in disclosure, or in the alternative, to disclose the name of, and all information provided by, sources whose names were withheld under both exemptions 7(C) and 7(D).

(7) To research all FOIA proceedings and other non-FBI materials to determine whether the identity of a source had been revealed by the FBI or the individual himself, or to release the name of, and information provided by, any source whose identity has been withheld under exemptions 7(C) or 7(D).

(8) To search all its files to determine if any of the sources withheld under exemption 7(C) in the Ferguson files were now dead, and to compile a list of deceased sources for the court. The court acknowledged that a source's privacy interest could continue beyond death, but stated that it would be greatly diminished and would have to be balanced against the interest in disclosure. Upon the FBI's compliance, the court could then engage in a balancing of interests, and determine whether to release the information related to a deceased source.

## DISCUSSION

Because there has been no final judgment entered in this case, we first turn to the question of whether we can exercise jurisdiction over this appeal. We conclude that we have jurisdiction as to the three district court "orders", Nos. (2), (3), and (4) listed above, that compel immediate disclosure, but not as to the other five "orders". As to the appealable "orders", we conclude that the district court erred in requiring disclosure, and reverse and remand. Finally, we address an issue presented by one of the unappealable "orders" in order to guide the district court on remand.

### A. *Appealability*

The FBI appeals all the "orders" issued by the district court, claiming appealability under either of two exceptions to the final judgment rule: (1) as injunctions under 28 U.S.C. § 1292(a)(1), or (2) as collateral orders under the *Cohen* collateral order doctrine, *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Ferguson concedes that three of the "orders" (Nos. (2), (3), and (4)) are appealable because they are true disclosure "orders" in the sense that they explicitly require immediate disclosure. But he argues that the remaining five are not appealable because they merely require the FBI to supply the court with additional information *in camera* and take other actions to assist the court in resolving the disputed issues of fact still remaining in the litigation.

■ It is well established that partial disclosure orders in FOIA cases are appealable. *See, e.g., Irons v. FBI*, 811 F.2d 681, 683–84 (1st Cir.1987) ("[t]o hold otherwise would be to force the government to let the cat out of the bag, without any effective way of recapturing it if the district court's directive was ultimately found to be erroneous"); *In re Steele*, 799 F.2d 461, 464–65 (9th Cir.1986) (finding appellate jurisdiction for disclosure orders under both 28 U.S.C. § 1291 and 28 U.S.C. § 1292(a)(1)); *Miller v. Bell*, 661 F.2d 623, 625 (7th Cir.1981) (per curiam) (finding appellate jurisdiction over release order "regardless of whether other issues remain pending in the district court"), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982). Following this line of authority, we agree with the FBI and Ferguson that the three "orders" explicitly requiring immediate disclosure of information are properly within our appellate jurisdiction.

■ With respect to "orders" Nos. (1), (5), and (6), the FBI argues that they are appealable because they effectively compel disclosure of all information for which the exclusive basis for withholding is the second clause of exemption 7(D). Ferguson

points to the district court's statement that there is still a disputed issue of fact as to whether certain records were compiled in the course of a legitimate criminal investigation. He argues that the district court should be permitted to conclude its fact-finding by means of the further *in camera* review it ordered.

The FBI responds that the district court's language in denying the FBI's motion for partial summary judgment should not be dispositive. It insists that the district court has already reviewed the documents as to the question of the legitimacy of the criminal investigation, and rejected the FBI's argument, and that the court ordered further review only to ensure that the FBI had not over-redacted other documents it had produced in response to Ferguson's request. The FBI also argues that appellate review is justified because the district court erred in deciding a question of law.

We disagree with the FBI's characterization of the district court's action. Because these issues were clearly left open for further consideration by the district court, we reject the FBI's attempt to turn them into disclosure orders. The district court directives do not qualify for appealability under the *Cohen* doctrine, since they do not conclusively determine a disputed issue that is separate from the merits of the litigation which would be effectively unreviewable if not reviewed at this time. *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 882 F.2d 682, 685–87 (2d Cir.1989). Nor do they fit within the appealability standards under 28 U.S.C. § 1292(a)(1) as being in the nature of injunctions. Since the district court has yet to determine whether the FBI must disclose the relevant information, there can be no showing of the irreparable harm necessary for us to take jurisdiction. *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981); *Korea Shipping Corp. v. New York Shipping Ass'n,* 811 F.2d.124, 126 (2d Cir.1987). In essence, the FBI seems to be arguing that because the district court erred in deciding a question of law, we should take jurisdiction over these issues.

There is no authority for such a proposition and we reject it.

■ The FBI then argues that "orders" Nos. (7) and (8) should also be appealable. It claims that these "orders" so exceed the permissible bound of what a court may require under FOIA and that they so transgress the practical limits of possible compliance that the FBI is left with no alternative to contempt unless it discloses the documents concerned. We are not persuaded. Again, there is no irreparable harm asserted, and we conclude that there are no grounds for appellate jurisdiction.

■ Anticipating that we might not find that the two research-and-compilation "orders" are appealable, the FBI urges in the alternative that we review the "orders" under the doctrine of pendent jurisdiction. The FBI argues that the significant overlap in the exemption 7 issues and the potential waste of judicial and government resources that would result from contempt proceedings and the subsequent appeals all counsel in favor of review. We have exercised our discretion to take pendent jurisdiction over nonappealable issues in certain circumstances. *See, e.g., San Filippo v. U.S. Trust Co. of New York,* 737 F.2d 246, 255 (2d Cir.1984) ("once we have taken jurisdiction over one issue in a case, we may, in our discretion, consider otherwise nonappealable issues in the case as well, where '[t]here is sufficient overlap in the factors relevant to [the appealable and nonappealable] issues to warrant our exercising plenary authority over [the] appeal'") (quoting *Sanders v. Levy,* 558 F.2d 636, 643 (2d Cir.1976), *aff'd en banc,* 558 F.2d 646, 647–48 (1977), *rev'd on other grounds sub nom., Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985)). *See also McCowan v. Sears, Roebuck & Co.,* 908 F.2d 1099, 1104–05 (2d Cir.) ("[w]here the court has unquestioned jurisdiction of a cause 'it would be absurd to require the court to close its eyes to another interlocutory order which, though not itself appealable, might infect the entire proceeding with error and thus require re-

versal after large expenditure of judicial and professional time' ") (quoting *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1201 (2d Cir.1970) (Friendly, J.), *cert. denied*, —— U.S. ——, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990)). However, the matter is squarely within our discretion, and we decline to exercise it to take jurisdiction over the nonappealable issues before us.

## B. *Merits*

At the request of a citizen, FOIA requires the disclosure of information compiled by government agencies, unless that information is clearly exempted from release by a specific provision of the act. 5 U.S.C. § 552. The act's "policy of broad disclosure [was] 'to ensure an informed citizenry, vital to the functioning of a democratic society.' " *FBI v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978)). Realizing that "legitimate governmental and private interests could be harmed by release of certain types of information", *id.*, congress provided nine specific exemptions from disclosure.

Exemption 7, relevant here, protects "investigatory records compiled for law enforcement purposes", but only to the extent that one of the six enumerated harms could also be demonstrated. 5 U.S.C. § 552(b)(7); *Abramson*, 456 U.S. at 622, 102 S.Ct. at 2059. Thus, judicial review of a claimed exemption requires a two-step inquiry: a document must first be shown to have been compiled for a law enforcement purpose, and if so, the agency must also demonstrate that release of the material would result in one of the six harms specified in the act. *Id.* Two of the enumerated harms are claimed here. They apply to disclosures that:

(C) constitute an unwarranted invasion of personal privacy, [or]

(D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished by the confidential source * * *.

5 U.S.C. § 552(b)(7)(C) & (D).

Using this standard, we must evaluate each of the three district court "orders" over which we have appellate jurisdiction. Those "orders" require the disclosure of:

No. (2)—any information which was originally given to the FBI by Howlette or the NYPD, based on the district court's belief that both sources had waived their status as confidential sources under exemption 7(D) by publicly revealing information,

No. (3)—any references to Howlette's name in the FBI files, based on the district court's finding exemption 7(C) could not be asserted by the FBI because Howlette's privacy interest was so diminished by his public statements as to be completely outweighed by the public interest in disclosure, and

No. (4)—any publicly-circulated materials, even if they were provided to the FBI by a confidential source, based on the district court's doubt as to whether these documents should be withheld under exemption 7(D) if they could also be found in other files that would not lead to the disclosure of the identity of the sources. We consider the FBI's challenges to each of these "orders" in turn.

### 1. *Waiver of Confidentiality ("Order" No. (2))*

■ Information provided by the NYPD was ordered disclosed because the NYPD had waived its status as a confidential source when it released its records pursuant to the New York Freedom of Information Law. Similarly, information provided by Howlette was ordered disclosed because Howlette also waived his status as a confidential source by testifying in court and making other public statements to the press following Ferguson's return from Guyana.

The FBI argues that the district court erred by recognizing that a confidential source could waive its confidential status by publicly releasing information. It in-

sists that the district court's ruling is directly at odds with prior second circuit precedent, and points to holdings in other circuits which have rejected a theory of waiver with respect to exemption 7(D).

We first look to cases before this circuit that have considered a similar issue to the one before us, and conclude that the issue of waiver in these circumstances presents a question of first impression for this court. In *Keeney v. FBI*, 630 F.2d 114, 116 (2d Cir.1980), we considered the issue of whether a local law enforcement agency could be a "confidential source" within the meaning of exemption 7(D). We held that it could, and in so concluding, stated in a footnote:

> We also reject plaintiff's argument that the exemption is inapplicable because the local law enforcement agencies in the present case have now been identified, and thus cannot constitute "confidential" sources. As we have discussed above, the term "confidential" is used in exemption 7(D) in the sense of reposing confidence or trust, rather than in the sense of "secret." This is reflected in the congressional conference committee's expansion of the exemption to permit non-disclosure not just of the source's identity, but also of all information provided by the source. The expansion was consistent with Congress's desire to ensure the continued flow of information from all sources, for while there will obviously be circumstances in which such agencies will not wish the fact of their own investigations to be made public and hence will not wish their identity disclosed, it is equally conceivable for an agency that is known to be investigating a particular matter to seek confidential treatment for fruits of that investigation.

*Id.* at 119 n. 2. The FBI argues that this footnote explicitly rejects any theory that subsequent revelation of information could constitute a waiver of confidentiality. We disagree. The situation in *Keeney* differs significantly from this case because *Keeney* involved the question of whether information given to the agency by a confidential source had to be released simply because the identity of the agency had been revealed. In those circumstances, we held

that disclosure of the identity of a source did not require subsequent disclosure of all the information provided by the source. Here, we deal with a situation where more than the identity of a source has been identified, but where the majority of the information itself has been released voluntarily by the claimed sources.

After the apparently clear mandate in *Keeney*, we introduced some confusion on the waiver issue with our decision in *United Technologies Corp. v. NLRB*, 777 F.2d 90, 93 (2d Cir.1985). There, we first considered whether a source could have a reasonable expectation of confidentiality even though he was aware that he could be called upon to testify in open court. In that context, we stated that "the proper interpretation of the term 'confidential source' includes an informant who is promised or reasonably expects confidentiality unless and until the agency needs to call him as a witness at trial." *Id.* at 94. This statement implies that the confidential status of an informant could be lost at a later time when the informant testifies.

We then considered whether the NLRB waived the protection of exemption 7(D) by disclosing to counsel for the union the identities of people as to whom the Board claimed a confidentiality exemption. *Id.* at 95. We stated:

> Under Exemption 7(D), an agency's ability to withhold information, if it so chooses, derives from the grant of confidentiality to the source of the information. The privilege [of confidentiality] belongs to the beneficiary of the promise of confidentiality and continues until he or she waives it. * * * Thus, the Board's disclosure of the names to counsel for the union did not waive the availability of Exemption 7(D).

*Id.* at 95–96. Although these statements seem to contemplate a concept of waiver, the holding in *United Technologies* is not applicable to the circumstances before us. First, *United Technologies*, like *Keeney*, involved the disclosure of only the identity of the source and not the information itself. Thus, only the first clause of exemption 7(D) dealing with the identity of the source

was really before the court. Furthermore, *United Technologies* involved a civil enforcement action, not a criminal investigation, thus reaffirming that the second clause of exemption 7(D) dealing with information provided by sources in the context of a criminal investigation had not been implicated. *See Parker v. Department of Justice,* 934 F.2d 375, 381 (D.C.Cir. 1991) (distinguishing our decision in *United Technologies,* on the ground that because the case involved civil law enforcement, it did not address the issue raised by the second clause of exemption 7(D) which protects "information compiled by a criminal law enforcement authority in the course of a criminal investigation"). Thus, we are left with a suggestion that a source could waive its confidential status, but nothing that clearly dictates the result in this case.

Given the ambiguity within our circuit, we consider the reasoning of other circuits that have decided FOIA exemption 7(D) cases. The most important of these is the first circuit's en banc consideration of whether informants who testified at public trials waived the confidential status of their identities as well as the information they had previously provided to the FBI, which waiver would effectively prevent the FBI's right to invoke exemption 7(D). *Irons v. FBI,* 880 F.2d 1446, 1446–47 (1st Cir.1989) (en banc).

The *Irons* en banc court rejected the concept of waiver in the context of exemption 7(D), *id.* at 1449, citing five reasons to support its conclusion. *Id.* at 1449–56. First, the clear statutory language makes no mention of waiver. *Id.* at 1449. Second, the extensive legislative history indicated that congress intended a literal interpretation of the act. *Id.* The court found that the object of the exemption was not simply to protect the source, but also to protect the flow of information to the law enforcement agency. *Id.* Third, decisions in other circuits have used broad language to describe the applicability of the source exemption and have interpreted it to apply irrespective of subsequent public identification of the source or portions of the information. *Id.* at 1452. Fourth, courts that have used the word "waiver" have not ap-

plied it to hold that there has been a waiver. *Id.* Finally, "the judicial effort to create a 'waiver' exception to exemption 7(D)'s language runs afoul of the statute's 'intent to provide "workable" rules.'" *Id.* at 1455 (citation omitted).

After this decision, the District of Columbia circuit considered the same issue, and found the *Irons* reasoning to be persuasive as well as consistent with prior precedent within the circuit. *Parker v. Department of Justice,* 934 F.2d 375, 380 (D.C.Cir.1991). Thus, the *Parker* court reaffirmed its rejection of a waiver concept, and concluded that "once an agency establishes that it received the requested information in confidence, the source will be deemed a confidential one, and both the identity of the source and the information he or she provided will be immune from FOIA disclosure." *Id.* at 378 (quotations and citation omitted). *See also Schmerler v. FBI,* 900 F.2d 333, 336 (D.C.Cir.1990) ("[o]nce the government has demonstrated that the sources are confidential, the statute does not require the government to justify the continued withholding against claims that the confidentiality is no longer warranted or that the public interest weighs in favor of disclosure").

The seventh circuit is also in agreement, *Kimberlin v. Dep't of Treasury,* 774 F.2d 204, 209 (7th Cir.1985) ("[t]he disclosure of information given in confidence does not render non-confidential any of the information originally provided"); *Brant Construction Co. v. EPA,* 778 F.2d 1258, 1262–63 (7th Cir.1985); as are other courts. *Cuccaro v. Secretary of Labor,* 770 F.2d 355, 360 (3d Cir.1985); *L & C Marine Transport, Ltd. v. United States,* 740 F.2d 919, 925 (11th Cir.1984).

The district court, however, rejected the FBI's reliance on *Irons* and cases that have followed similar reasoning, finding that the facts presented in those cases were distinguishable. It stated that those cases involved confidential information that had been independently revealed, or situations where the requester became aware that certain information had become public through someone other than the confiden-

tial source, and that under those circumstances, the mere fact of revelation or the requester's independent knowledge did not deprive the confidential source of the protection of the exemptions claimed. By contrast in this case, the NYPD had released its own reports, and Howlette had testified at great length to the same events on which he had reported to the FBI. In addition, the court rejected the reasoning in *Irons*, finding the language in *United Technologies* more persuasive. The district court stated that "[t]he disclosure of this information, more than two decades after the events at issue, will not seriously damage the FBI's ability to gather information from non-federal law enforcement agencies." It found that the government had not sufficiently articulated any reason why other sources would be deterred from sharing information with the FBI as a result of disclosure under these factual circumstances. Thus, the court concluded that the purposes of FOIA would not be served by failing to order limited disclosure.

■ Because we find the reasoning of the *Irons* court persuasive, we reject the idea that subsequent disclosures of the identity of a confidential source or of some of the information provided by a confidential source requires full disclosure of information provided by such a source. Although the district court's analysis of interests is attractive in the circumstances before us, where there seems to be little point in continuing to keep information hidden, such a balancing of factors is not appropriate given the rule we have adopted. Such considerations are not relevant to the applicability of exemption 7(D). If we are to hold that the unique circumstances here justify a deviation from the blanket rule, we would be opening the door for a time-consuming consideration of factors in every situation. "Congress * * * created a scheme of categorical exclusion; it did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis." *FBI v. Abramson*, 456 U.S. 615, 631, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982).

### 2. *Privacy Interest*

After rejecting the FBI's use of exemption 7(D) to protect the disclosure of information of which Howlette was the original source, the district court also rejected the FBI's use of exemption 7(C). The FBI challenges this holding only if we conclude that it cannot assert exemption 7(D). Since we agree that all information with respect to Howlette was exempt from disclosure under exemption 7(D), we need not reach the issue of whether exemption 7(C) could provide similar protection.

### 3. *Publicly–Circulated Material*

■ Finally, the FBI challenges the district court's "order" requiring disclosure of all publicly-circulated materials even if provided by confidential sources if the information was also in files not provided by confidential sources. The court felt that such information should be revealed because they posed little or no risk of identifying the source of the information. It found that many of the records reviewed *in camera* contained multiple statements of the same information, concluding that "[t]his multiplicity suggests that each confidential source who provided that information and for whom exemption (b)(7)(D) was asserted was not the only source of that information and reduces the likelihood any connection could be made between the information and the identity of the source."

The FBI insists that any information provided by a confidential source is exempt from disclosure, regardless of any surrounding circumstances. It argues that the second clause of the exemption permits the FBI to withhold all information received from a confidential source during a criminal investigation, without regard to the content of the information or to whether disclosure would be likely to reveal the identity of the source, if two requisite circumstances are present: (1) information provided in confidence, (2) during a criminal or national security investigation. In contrast, the FBI points to the first clause of the exemption which states that information in law enforcement records can be

withheld only if the disclosure of the information "could reasonably be expected to disclose the identity of a confidential source", as well as the language in exemption 7(C) which permits an agency to withhold information in law enforcement records only if production of the information "could reasonably be expected to constitute an unwarranted invasion of privacy," which requires a balancing of an individual's privacy interest against the public interest in disclosure.

The FBI supports its position by pointing to the 1986 amendments to exemption 7(D). It argues that these amendments unequivocally clarified congressional intent by replacing the words "confidential information furnished only by a confidential source" with "information furnished by a confidential source", thereby avoiding any suggestion that the exemption applies only to confidential information that is not available from another source or that the information must be source-identifying.

The question here is whether information that was given to the FBI by a confidential source, as well as many other sources, is entitled to exemption 7(D) protection. The rule urged by the FBI would mean that once a confidential source is in any way associated with a piece of information, the promise of confidentiality attaches to that piece of information, never to be removed under any circumstances. Here, publicly-circulated materials that appear in various FBI files also happened to have been relayed to the FBI by a confidential source. ▆▆▆ We understand why the district court held as it did; nevertheless, we agree with the government's position. The statutory language does not leave room for a judicial balancing of the equities, or for a determination of whether any harm would result from disallowing an exemption. Based on the same reasoning on which we upheld exemption 7(D)'s applicability to the NYPD and Howlette, we hold that the district court erred. Exemption 7(D) is concerned not with the content of the information, but only with the circumstances in which the information was obtained. *See Shaw v. FBI*, 749 F.2d 58, 61 (D.C.Cir.

1984). Once it is shown that information was provided by a confidential source, the information itself is protected from disclosure, despite the fact that there is no danger that the identity of the source could be divulged.

#### C. *Other*

Although we do not take jurisdiction of the issue of whether the district court erred as to the FBI's burden in proving a law enforcement purpose, we comment on the burden to the extent that the district court may order disclosure of the same information because it was not gathered for a law enforcement purpose.

The district court held that the FBI had failed to meet its threshold burden of establishing that the records and information withheld under exemption 7 had been compiled for law enforcement purposes. The court had serious questions as to whether the FBI began its investigations of Ferguson for purposes of law enforcement or for purposes of monitoring Ferguson solely because of his political affiliations and activities. It did not credit the FBI's assertion of a law enforcement purpose, because, of the five federal statutes the FBI cited as authority for its investigation of Ferguson, two were not relevant to most of the documents at issue since they were enacted after Ferguson's state-court conspiracy indictment and after much of the information in the first investigation had been gathered. The other three statutes, the Smith Act, the Internal Security Act, and the Subversive Activities Control Act, had been strictly limited by the Supreme Court by 1963. In addition, the district court noted that the FBI had opened its 1965 investigation of Ferguson because of his affiliation with the Organization of Afro–American Unity ("OAAU"), an organization founded by Malcolm X, and its 1966 investigation because of Ferguson's affiliation with RAM.

The court concluded that a genuine issue of material fact existed as to whether the FBI had met its burden of establishing a law enforcement purpose. However, because the court felt that the FBI should be

given an opportunity to establish the exemption, it stated its willingness to entertain further proof on the issue.

■■■ FOIA expressly places the burden "on the agency to sustain its action[s]" and directs the district courts to "determine the matter de novo." 5 U.S.C. § 552(a)(4)(B). *U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 1472, 103 L.Ed.2d 774 (1989) (hereinafter, *Reporters Committee*). Before it can invoke exemption 7, the government has the burden of proving the existence of a compilation of information for the purpose of law enforcement. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989).

In *Williams v. FBI*, 730 F.2d 882, 883 (2d Cir.1984), we held that the district court should not engage in a factual inquiry as to the legitimacy of a law enforcement purpose. Reviewing a magistrate's legal conclusion that FBI documents were not compiled for a legitimate law enforcement purpose, we concluded that "Congress intended that subcategories (A)–(F) protect from disclosure the described information whether or not the reviewing judicial tribunal believes there was a sound law enforcement basis for the particular investigation", *id.*, and that "Congress assumed that all investigatory records of the FBI were compiled for a law enforcement purpose". *Id.* at 884. Nothing indicated that "Congress intended the release of FBI records containing one or more of the six protected subcategories of information in the event a court determined such records were compiled in the course of an unwise, meritless or even illegal investigation." *Id.* at 884–85. The magistrate's factual finding that there was no threat of any federal criminal offense was therefore irrelevant. *Id.* Thus, " 'compiled for law enforcement purposes' continues to describe the general type of record for which the exemption is designed and is not a restriction on the use of the exemption." *Id.* at 885 (brackets omitted).

Our *Williams* holding appears to leave no room for the district court's inquiry into whether the FBI's asserted law enforcement purpose was legitimate, a matter the district court should consider before it expends additional judicial effort on these claims.

## CONCLUSION

We dismiss the FBI's appeal as to those "orders" that did not require immediate disclosure of information. We reverse the district court's "orders" that did require disclosure of information originating from the NYPD and Howlette, as well as the publicly-circulated materials.