**Vincent James LANDANO, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE and the Federal Bureau of Investigation, Defendants.**

**Civ. No. 90–1953 (HLS).**

United States District Court, D. New Jersey.

Sept. 22, 1994.

Neil Mullin, Smith Mullin, P.C., West Orange, NJ, for plaintiff.

Susan C. Cassell, Asst. U.S. Atty., Newark, NJ, for defendants.

## OPINION

SAROKIN, District Judge.

Before the court are defendants' motion for summary judgment and plaintiff's cross-motions for summary judgment and an award of attorney fees and costs.

*Background and Procedural History*

Plaintiff Vincent Landano ["Landano"] was convicted in New Jersey state court for the 1976 murder of John Snow, a New Jersey police officer, in the course of a robbery in Kearny, New Jersey. At trial, the evidence showed that Victor Forni and a motorcycle gang, "the Breed," orchestrated the robbery. *U.S. Department of Justice v. Landano,* —— U.S. ——, ——, 113 S.Ct. 2014, 2017, 124 L.Ed.2d 84 (1993).[1] Although not a Breed member, Landano was implicated as a recruit for the crime.

Plaintiff has consistently maintained his innocence of the charges. To support his claim in later state proceedings that the prosecutor had withheld material, exculpatory evidence in violation of *Brady v. Maryland,* Landano filed a request in September 1988 with the FBI under the Freedom of Information Act ["FOIA"] for all information it had compiled regarding the murder of Snow. *See Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In May 1990, the FBI released documents, some of which contained redactions, and withheld other documents in their entirety. The government withheld this material on the basis of FOIA Exemption 2, protecting against disclosure of internal agency practices; Exemptions 6 and 7(C), protecting against unwarranted invasions of personal privacy; and Exemption 7(D),[2] protecting confidential sources of law enforcement information.[3] 5 U.S.C. § 552(b)(2), (b)(6), and (b)(7)(C, D).

After exhausting his remedies within the Department of Justice,[4] plaintiff initiated this action in May 1990 seeking disclosure of the

---

1. Contrary to the Supreme Court's understanding of the evidence at trial, Landano's counsel stated at the July 25, 1994 hearing before this court that although members of the Breed participated in the crime, the gang connection was never proven. The government also refers to "potential involvement of a gang or criminal organization." Def. Mem. at 11.

2. Exemption 7(D) provides withholding

   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investiga-

   tion ..., information furnished by a confidential source.

   § 552(b)(7)(D).

3. Exemption 7(D) is the sole issue before the court on remand, and hence the court will only briefly summarize the procedural history of Landano's request for materials withheld under Exemptions 2, 6, and 7(C). This court upheld the FBI's withholding under Exemption 2 and treated the material withheld under Exemption 6 as more appropriately withheld under Exemption 7(C). The court did order disclosure of documents withheld under Exemption 7(C), but on appeal, the Third Circuit reversed and adopted the government's position. Arguments as to Exemption 2 and 6 were not presented on appeal. The Supreme Court declined plaintiff's petition for review of the Third Circuit's holding on Exemption 7(C).

4. *See* First Amended Complaint, Exh. G.

requested files in their entirety.[5] The FBI claimed Exemption 7(D) for information from five types of sources: "regular FBI informants; individual witnesses who were not regular informants; state and local law enforcement agencies; other local agencies; and private financial or commercial institutions." *Landano,* —— U.S. at ——, 113 S.Ct. at 2018 (citation omitted).

With regard to Exemption 7(D), this court held that the FBI's categorical explanations sufficed for confidential informants and undercover personnel, but as to all other withheld information, the court required specific reasons for each non-disclosure. 751 F.Supp. 502, 508 (D.N.J.1990), *clarified on recon.,* 758 F.Supp. 1021 (D.N.J.1991). On appeal, the Third Circuit affirmed in relevant part and held that the government had either to prove the source received express assurance of confidentiality or provide " 'detailed explanations relating to each alleged confidential source' " to support an inference of confidentiality. 956 F.2d 422, 435 (3d Cir.1992) (quoting *Lame v. United States,* 654 F.2d 917, 928 (3d Cir.1981)).

The Supreme Court granted *certiorari* to address the nature of the FBI's evidentiary burden under Exemption 7(D). As discussed below, the Supreme Court set forth new guidelines for analyzing the government's assertions of inferred confidentiality and suggested some potentially relevant factors for consideration. Because the Third Circuit had decided that it lacked the discretion to rely on such factors, the Supreme Court vacated the judgment of the Third Circuit and remanded the matter back to that court for further proceedings consistent with its opinion. The Third Circuit then remanded the matter to this court for consideration of the remaining issues under Exemption 7(D).

**5.** In January 1989, plaintiff had requested the FBI's file on Forni. In June 1990, the Department of Justice stated it was unable to comply under the Privacy Act, 5 U.S.C. § 552a(b)(2) and FOIA, 5 U.S.C. § 552(b)(7)(C). Prior to this court's first opinion in this FOIA matter, 751 F.Supp. 502, Forni himself authorized the release of his FBI file to plaintiff, rendering the issue as to this nondisclosure moot.

**6.** In forging its own test, the Court rejected both the government's argument for a blanket pre-

*Discussion*

This court can only grant summary judgment if there are no issues of material fact and, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wisniewski v. Johns–Manville,* 812 F.2d 81, 84 (3d Cir.1987). There are no factual issues in dispute. The court is called upon to apply the Supreme Court's approach in *Landano* to the government's remaining Exemption 7(D) claims.

## I. Plaintiff's Exemption 7(D) Claim
### The Supreme Court's Opinion

The Supreme Court rejected the concept that the government is entitled to a presumption that the source is confidential whenever the source provides information to the FBI in the course of a criminal investigation. Rather, the Court suggested that there are narrowly defined circumstances which can provide a basis for inferring confidentiality in the absence of an express agreement. —— U.S. at ——, 113 S.Ct. at 2023. The Court identified the "character of the crime at issue" and "the source's relation to the crime" as two relevant factors in this analysis but did not restrict analysis to these factors.[6]

The burden is cast upon the government to demonstrate that the information was provided on an implied assurance of confidentiality. The Supreme Court decision, however, suggests that even where the government presents such narrowly defined circumstances, the party requesting the information has the opportunity to rebut the presumption. The Court specifically stated that once the government established the factors which it

sumption of confidentiality whenever a source provides information to the FBI in the course of a criminal investigation, and plaintiff's assertion that unless a source could be assured its identity would never be disclosed, FBI sources "could not have had a reasonable expectation of confidentiality because the Bureau might have been obliged to disclose the sources' names" under *Brady, Jencks,* or criminal discovery rules. *Id.* —— U.S. at ——, 113 S.Ct. at 2020.

claims gave rise to the inference of confidentiality, "[a]rmed with this information, the requester will have a more realistic opportunity to develop an argument that the circumstances do not support an inference of confidentiality." *Id.* — U.S. at ——, 113 S.Ct. at 2024.

## The Parties' Contentions

■ The FBI now limits its claims of Exemption 7(D) to information from and identities of eyewitnesses, sources with dealings with the Breed, individuals with information about the murder suspects' whereabouts, and state and local law enforcement agencies. The government proffers the following factors as giving rise to the inference of confidentiality:

1. the particularly violent nature of the crime: the "cold-blooded murder of a police officer in the course of an armed robbery";[7]

2. the possible involvement of a motorcycle gang;[8]

3. the broad publicization in the community of the events concerning the murder and the possible gang connection;[9]

4. the "known willingness and ability of the perpetrators of such a crime to use acts of violence" and the exposure of sources to such potential harm;[10]

5. the sources' direct connection to the murder;

6. the FBI's reputation for confidentiality and protection of sources;[11]

7. the FBI's measures to ensure that interviews regarding a criminal investigation are conducted so as to reassure the witness of confidentiality;[12]

8. state and local law enforcement agencies' expectations of confidential treatment of information provided to the FBI;[13] and

9. the fact that release of local law enforcement records during an open criminal investigation could seriously jeopardize the underlying investigation.[14]

In response, Landano contends the following factors rebut any implied assurance of confidentiality:

1. witness identities and other information were liberally provided to the defense before trial in 1976; and

2. the prosecution had not sought a protective order governing the disclosed information.

As to eyewitnesses and those with dealings with the Breed or information concerning suspects' whereabouts, the violent nature of the crime, the potential involvement of the motorcycle gang, and the broad publicization of the murder persuade the court that an implied assurance of confidentiality is warranted. The Supreme Court stated that

when certain circumstances characteristically support an inference of confidentiality, the Government ... should be able to claim exemption under Exemption 7(D) without detailing the circumstances surrounding a particular interview.

— U.S. at ——, 113 S.Ct. at 2022. The nature of the sources' relationships to the crime is such that they may well have feared for their safety in providing the FBI with information. As the Court indicated, "[m]ost people would think that witnesses to a gang-related murder likely would be unwilling to speak to the Bureau except on the condition of confidentiality." *Id.* — U.S. at ——, 113 S.Ct. at 2023. The court determines that under this "generic" circumstances approach,

---

7.  Moran Aff. at ¶ 13.

8.  *Id.*

9.  *Id.*

10.  *Id.* at ¶ 14.

11.  *Id.* at ¶ 16.

12.  *Id.* at ¶ 17. Special Agent Moran states that "[w]ith the rarest of exceptions, witness interviews are conducted under circumstances of privacy, so that any information conveyed cannot be overheard by others." *Id.*

13.  *Id.* at ¶ 19. Moran states that the "consistency of the FBI's confidential treatment of such information, over the course of repeated, day-to-day contacts with members of the law enforcement community, has communicated an implied assurance of confidentiality" upon which these agencies rely. *Id.*

14.  *Id.* at ¶ 21.

the government has provided the basis for a rebuttable inference of confidentiality as to these sources.[15]

As to the government's claim of exemption for information from cooperating law enforcement agencies, the Supreme Court held that "[g]iven the wide variety of information that such institutions may be asked to provide, we do not think it reasonable to infer that the information is given with an implied understanding of confidentiality in all cases." *Id.* —— U.S. at ——, 113 S.Ct. at 2022. The Court stated that "[t]here is no argument ... that disclosure ordinarily would affect cooperating agencies adversely or that the agencies otherwise would be deterred from providing even the most nonsensitive information." *Id.*

■ The FBI now narrows its claim of confidentiality for law enforcement agency communications to matters under active investigation or to information regarding the Breed.[16] Def. Mem. at 17. Special Agent Moran states that

> [t]he consistency of the FBI's confidential treatment of such information, over the course of repeated, day-to-day contacts

with members of the law enforcement community, has communicated an implied assurance of confidentiality that state and local law enforcement agencies rely upon. Based on my own contacts with state and local law enforcement agencies, and on information I have received from other FBI agents, it is my firm belief that such tacit assurances of confidentiality are present in most communications between the FBI and such agencies, and that such agencies would be unwilling to cooperate with the FBI if they could not continue to rely on such confidentiality.

Moran Aff. at ¶ 19.[17]

Recognizing the importance of the free flow of communication among law enforcement agencies and protection of on-going investigations, the court concludes that the information from cooperating state and local law enforcement agencies, as described in the FBI affidavits, enjoys an inference of confidentiality.

### Landano's Waiver Argument

■ Landano claims that the FBI waived any implied condition of confidentiality since

---

15. For example, as to sources with gang dealings, Document 15 included information from an individual familiar with members of the Breed and who identified members of the gang from photographs. Moran Decl. at ¶ 22, p. 19.

Although the Supreme Court held that the government need not make a particularized showing where generic circumstances support an inference of confidentiality, the government must give sufficient facts to determine whether a document falls within the generic circumstance approach. Courts have interpreted the Supreme Court's decision as requiring that a court proceed on a source-by-source basis, rather than a categorical approach, where a generic inference of confidentiality is made. *See, e.g., Hale v. U.S. Dept. of Justice*, 2 F.3d 1055, 1057 (10th Cir.1993) (if a district court relies upon an inference "for a particular source ..., the court should clearly indicate that it is relying on such an inference, and the circumstances relied upon to support such an inference should be articulated"). *Cf. Crancer v. U.S. Dept. of Justice*, 999 F.2d 1302, 1308 (8th Cir.1993) ("the Court stated that the government could point to categories of documents, the circumstances surrounding which would support the inference that the sources to whom they pertained were confidential") (citing *Landano,* —— U.S. at ——, 113 S.Ct. at 2023), *cert. denied,* —— U.S. ——, 114 S.Ct. 1186, 127 L.Ed.2d 537 (1994).

The court determines that the FBI affidavits provide sufficient facts on a source-by-source basis to warrant a generic inference of confidentiality.

16. For example, Special Agent Moran describes Document 40 as information from a local law enforcement agency about the activities and possible whereabouts of a gang member. Moran Decl. at ¶ 22, p. 25.

17. Special Agent Ronald Romano who worked in the Newark, New Jersey Field Office of the FBI from November 1973 to December 1980 stated that

the clear understanding always was, that information which was sent to us from other law enforcement entities is confidential, and that the information will not be disclosed by the FBI, outside of law enforcement purposes.... Thus, in order to ensure a free-flowing exchange of information by and between these state and local entities, it was the policy of the Newark Field Office to treat all of the information which we received as confidential, and we would not and did not disclose it, other than in pursuit of our law enforcement mission.

Romano Decl. at ¶ 4.

it "did not in 1976 behave as if its 'sources' in the Snow investigation were 'confidential.'" Pltf. Mem. at 14.[18] He further states that the prosecutors "openly and without limitation provided names and addresses" to himself and counsel to Breed president Allen Roller. *Id.* at 14. Plaintiff notes that the FBI did not seek a protective order at the time limiting the disclosures solely to himself, Forni, or their attorneys. The government counters that trial-related disclosures do not indicate that the FBI has waived a claim to Exemption 7(D) as to those materials. *See* Supernau Aff. at ¶ 51.

■ The Supreme Court did not decide the waiver issue, but logic would suggest that even if confidentiality could be inferred, the need for it would dissipate once the informant was identified to the defendants or the public, such as by being a witness at a trial.[19] Even the government concedes that assurances or inferences of confidentiality are not absolute as to all others and forever. If disclosure became necessary for law enforcement purposes, and thus public, the exemption should not apply.

In such circumstances, the initial reasons for confidentiality would have been supersed-ed by the need for disclosure, not internally, but to the persons the informant might fear or the public in general. Indeed, as Special Agent Supernau recognized,

> [p]ersons providing information, including witnesses to a crime who may expect to be called upon at a later time to testify in public at a judicial proceeding, should be secure in the knowledge that, *absent the necessity of such public testimony* with its attendant judicial restraints and protections, their assistance and their identities will be held in confidence.

Supernau Aff. at ¶ 49 (emphasis added).

In conclusion, defendants' motion for summary judgment on its Exemption 7(D) claims is granted except as to provision of trial-related releases of information. Summary judgment is granted to plaintiff only as to those previous disclosures. *See, e.g., Irons,* 880 F.2d at 1457 (Exemption 7(D) applies to confidential sources except as to information provided in trial testimony).[20]

## II.  Plaintiff's Section 1983 Claim

■ In his cross motion for summary judgment, plaintiff moves for an order pursuant to 42 U.S.C. § 1983 for disclosure of

---

18.  Plaintiff states that the FBI directly released information in 1976 to himself and Forni. *See* Pltf. Mem. at 7–8. The government counters that the FBI never directly gave plaintiff any documents and contends that plaintiff obtained documents in 1976 exclusively through the Hudson County Prosecutor. Plaintiff mostly likely obtained the information through the prosecution, but as discussed below, the important factor is the withheld material includes information previously disclosed at trial.

19.  The Court remarked that it "need not reach the question whether a confidential source's public testimony 'waives' the FBI's right to withhold information provided by that source." —— U.S. at ——, 113 S.Ct. at 2020 (citing *Irons v. FBI,* 880 F.2d 1446 (1st Cir.1989) (en banc)).

20.  Plaintiff correctly contends that the Supreme Court's *Landano* decision undermines the reasoning in *Parker v. U.S. Dept. of Justice,* 934 F.2d 375 (D.C.Cir.1991), which held that trial testimony does not waive the FBI's right to withhold information under FOIA exemptions. In direct conflict with *Landano,* the *Parker* court specifically enunciated that "we presume that information obtained by an agency during the course of a criminal investigation has been procured pursuant to an assurance of confidentiality." 934 F.2d at 378 (citations omitted). Relying on this "almost irrebuttable presumption," the court held that Parker failed to provide "'absolutely solid evidence showing that the source of an FBI interview in a law enforcement investigation has manifested complete disregard for confidentiality.'" *Id.* (citation omitted).

In *Ferguson v. FBI,* 957 F.2d 1059 (2d Cir. 1992), the court held that trial testimony and other public statements do not waive the FBI's right to claim FOIA exemptions. The *Ferguson* court relied heavily upon the *Irons* decision but neither discussed nor adopted the *Irons* court's position that information "actually disclosed in the source's prior public testimony" is not exempt under FOIA. *Irons,* 880 F.2d at 1457.

In dicta, the *Irons* court noted two circumstances under which later public disclosure may be grounds for rejecting the government's claim of confidentiality:

> [s]ometimes, of course, the fact that a source later gave public testimony might show that a law enforcement agency *never* gave a valid assurance of confidentiality in the first place; and sometimes it might show that an assurance was intended by all parties to expire after a certain time.

*Id.* at 1448 (citations omitted).

witness statements and other relevant evidence not otherwise disclosable under FOIA. The court determines that plaintiff has not properly asserted a Section 1983 cause of action. Plaintiff did not allege a Section 1983 claim in its complaint and cannot raise this on a cross motion for summary judgment. *See* May 16, 1990 Complaint; August 13, 1990 First Amended Complaint.

Plaintiff's motion for summary judgment on this ground is denied.

### III. Plaintiff's Motion for an Award of Attorneys Fees and Costs

Under the Freedom of Information Act, a court may "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case ... in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). Once a claimant has shown it has substantially prevailed, the "eligibility" prong of this analysis, the district court has the discretion to determine whether a claimant is "entitled" to such an award. *See, e.g., Long v. U.S. I.R.S.*, 932 F.2d 1309, 1313 (9th Cir.1991).

■ In order to show eligibility, several circuits have adopted a two-factor approach. The claimant bears the burden of proving the suit was necessary to obtain the documents and had a substantial causative effect on delivery of the information. *See* Alba Conte, Attorney Fee Awards § 20.03, at 124 & n. 17 (2d ed. 1993) (citing cases); Joel P. Bennett, Winning Attorneys' Fees from the U.S. Government § 3.02[2], at 3–13 & n. 26 (1994) (citing cases).[21] In determining the necessity of the suit, some courts have considered the need for the information and the extent to which the government made a good faith effort to fulfill the request. Conte, Attorney Fee Awards § 20.03, at 124–25. Plaintiff had no choice but to file suit seeking disclosure of redacted information and documents with-

held in their entirety. With no statute of limitations for murder and thus the possibility of a retrial weighing upon him, plaintiff has a need for the information implicating him in Snow's murder. Although plaintiff does not contend that the government made less than a good faith effort to comply, the court believes that this suit was necessary to obtain the withheld materials.

■ To prove causation, plaintiff must show the government had control over the nondisclosure and the FOIA suit "triggered the release of the information." Conte, Attorney Fee Awards § 20.03, at 127. Although the Supreme Court rejected plaintiff's position on Exemption 7(D), the government would not have made its supplemental release of material without plaintiff's filing of this action, nor would it have released information previously disclosed in the course of trial as this court now determines to be appropriate. The government itself states that

> [a]s a result of the Supreme Court's opinion, the FBI undertook an intensive review of the entire file to determine which deletions it could still justify, and which documents or portions of documents should now be released. Pursuant to this exhaustive review, the FBI is now making a supplemental release of material to plaintiff.

Def. Mem. at 5.[22] Although plaintiff's challenges to withholdings under Exemptions 2, 6, and 7(C) failed, plaintiff has succeeded in obtaining a number of documents withheld or redacted under Exemption 7(D). *See* Conte, Attorney Fee Awards § 20.03, at 126 ("plaintiff need not obtain all the documents sought in order to substantially prevail ... as long as she or he succeeds on the central claims of the lawsuit or in obtaining the one document with which the plaintiff was primarily concerned"); Bennett, Winning Attorneys' Fees § 3.02[2], at 3–13 ("[e]ven the release of a

---

**21.** The government erroneously places these two factors under an analysis of entitlement. *See* Reply at 20.

**22.** The government made further releases pursuant to the United States Attorney General's October 4, 1993 policy directive to the heads of departments and agencies with in the Department of Justice relating to FOIA requests. Def. Mem.

at 5–6. On the basis of the papers submitted, the court cannot ascertain whether plaintiff's litigation causally triggered this policy modification. Such a determination, while potentially offering further support to plaintiff's argument, is not necessary to the court's determination of eligibility.

relatively small number of documents may be sufficient if the documents are important to the plaintiff").

■ Plaintiff has shown he is eligible for a FOIA award.[23] The court now turns to a consideration of plaintiff's entitlement to an award. Among the relevant factors, courts have primarily examined four issues: benefit to the public from the suit; plaintiff's commercial interest in the information; nature of plaintiff's interest in the documents; and whether the government's withholding had a reasonable basis in law. Conte, Attorney Fee Awards § 20.04, at 129; Bennett, Winning Attorneys' Fees § 3.02[3], at 3–17.

Here, the public clearly benefits from this disclosure since it has an interest in the fair and just administration of the criminal justice system as to Landano. More broadly, the public benefits from the Supreme Court's guidelines which permit much easier access to government-held information, particularly in the circuits which adopted a nearly irrebutable presumption of confidentiality to information related to criminal investigations.[24] *See* —— U.S. at —— ——, 113 S.Ct. at 2018–19. Plaintiff will not derive commercial gain from the disclosure, and although he has a strong private interest in the information, this interest furthers the public's concern with the criminal justice system.[25] As to the fourth factor—reasonable basis for withholding documents—plaintiff must show the government's position had no colorable basis in law or that the government acted " 'merely to avoid embarrassment or to frustrate the requester.' " Bennett, Winning Attorneys' Fees § 3.02[3], at 3–24 (quoting S.Rep. No. 93–854, 93d Cong., 2d Sess. at 19 (1979)). Despite his arguments, plaintiff cannot prove the government acted unreasonably. *See* Pltf. Mem. at 28. Resolving the conflict among the circuit courts over the FBI's evidentiary burden under Exemption 7(D) was the very reason the Supreme Court granted

*certiorari. See* —— U.S. at —— —— ——, 113 S.Ct. at 2018–19 (listing the District of Columbia, Second, Sixth, Seventh, Tenth, Eleventh Circuits as adopting the government's position). The government has prevailed on its Exemption 2, 6, and 7(C) redactions.

Although the government was reasonable in withholding information, the clear public benefit in disclosure and the plaintiff's lack of purely private or pecuniary interests in disclosure warrants an award of attorney fees and other litigation costs to plaintiff. The court will refer the exact determination of an award to the magistrate judge.

*Conclusion*

The Supreme Court, recognizing the need to encourage voluntary cooperation with the FBI and other law enforcement agencies, nonetheless, concluded that it was not the policy of Congress to prohibit the disclosure of all sources and information in connection with a criminal investigation. It recognized that there were circumstances under which such confidentiality could be inferred absent a specific agreement, but that the government has the burden to establish the factors and claim the presumption, and that the requestor could rebut the presumption.

Here, the defendants have demonstrated generic circumstances meriting an inference of implied confidentiality regarding the sources' identities and information. Plaintiff has effectively rebutted this presumption as to information actually disclosed in the course of trial. However, in those instances which warrant a finding of implied confidentiality, even the disclosure of the identity of a witness and testimony by that witness does not necessarily mandate a disclosure of all information provided by that witness. There may be a continuing need to protect the information that remains undisclosed, and the expectation of confidentiality may survive

---

**23.** The court disagrees with the government's claim that consideration of eligibility is premature at this point. Both necessity and causation can be analyzed now that the court has applied the Supreme Court's guidelines to the remaining Exemption 7(D) materials.

**24.** Although the Court rejected plaintiff's argument and took the middle ground between the

parties' contentions, plaintiff's suit gave rise to these guidelines.

**25.** The government asserts that consideration of public benefit and plaintiff's interests is premature. The court cannot concur. The types of information withheld or redacted—such as eyewitness material—has direct relevance to Landano's involvement, or lack thereof, in the murder.

as to those undisclosed matters. However, the protection against disclosure granted hereunder in no way relieves the prosecution of its obligation to disclose exculpatory material to a defendant.

For the foregoing reasons, defendants' summary judgment motion is granted except as to trial-related disclosures. Plaintiff is accordingly denied summary judgment except as to prior trial-related disclosures and is granted an award of attorney fees and costs to be determined by the magistrate judge.